Belknap,
May 5, 1953.     No. 4149.

DIEDERIK HOEBEE *v.* PARKMAN D. HOWE *& a.*

170

*Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for the plaintiffs.

*Nighswander, Lord & Bownes* (*Mr. Bownes* orally), for the defendants Parkman D. and Helen M. Howe.

*Sulloway, Jones, Hollis & Godfrey* and *Irving H. Soden* (*Mr. Jones* and *Mr. Soden* orally), for the defendant, Skyhaven, Inc.

BLANDIN, J.   The first question which we shall consider is whether the Court's ruling is correct that certain state and federal statutes are a basis for liability of the defendant, Skyhaven, Inc.   At the outset it should be noted that the effect of either the federal or state statute, if applicable at all, would be substantially the same applied to an intrastate flight such as was being made here.   Both the Federal Civil Aeronautics Act of 1938 (49 U. S. C. A., ss. 401-705) and the New Hampshire Aeronautics Act passed in 1941 (Laws 1941, c. 199; R. L., c. 306), which was evidently copied from the federal act, contain identical definitive provisions as to who are deemed

operators of aircraft. So far as material, the provisions are as follows: "Any person who causes or authorizes the operation of aircraft, whether with or without the right of legal control (in the capacity of owner, lessee, or otherwise) of the aircraft, shall be deemed to be engaged in the operaton of aircraft within the meaning of this chapter." R. L., c. 306, s. 3 XXII; U. S. C. A., *supra, s.* 401, *par.* 26. Both acts also contain substantially the same language relative to liability, that "It shall be unlawful . . . for any person to operate or authorize the operation of aircraft in violation of any other rule or regulation" issued under the authority of the act. *Ib.,* 306, s. 26 VII; see also, s. 560, U. S. C. A. (a) *supra.*

At the time of the accident our State Aeronautics Commission and the Federal Aeronautics Board had issued identical air traffic rules forbidding any person to "operate an aircraft in a careless or reckless manner so as to endanger the life or property of others." State Commission, Rule 5; Civil Air Regulations of the Civil Aeronautics Board, Part 60, 12 Fed. Reg. 5548, Air Traffic Rules, s. 60.102. Also there were rules providing that "Except when necessary for take-off or landing, no person shall operate an aircraft below the following altitudes: . . . (c). Over Other Than Congested Areas. An altitude of 500 feet above the surface, except over open water or sparsely populated areas. In such event the aircraft shall not be operated closer than 500 feet to any person, vessel, vehicle, or structure . . : ." New Hampshire Commission Rule 10 (c). See also, Federal Regulations, *supra, s.* 60.107 (c). Each act forbids the violation of any rule or regulation issued under the other. R. L., c. 306, ss. 2 (c), 26 VII; 49 U. S. C. A., s. 560. It seems to us from reading our act that the intent of our Legislature is clearly to place responsibility on the owner, even though he be without control, for the conduct of one to whom he entrusts the plane. The language is unequivocal and without qualification expressed or reasonably to be implied.

Furthermore, there are other persuasive reasons for reaching this conclusion. The relevant provisions in our act were apparently taken almost verbatim from the federal act. The latter was amended prior to this accident by adding a section (*s.* 524) expressly relieving certain security holders only from liability for the operation of aircraft by persons not under their control. The House Committee on this legislation in their report stated, as the reason for the proposed change, that "Provisions of present Federal and State law might be construed to impose upon persons who are owners of aircraft for security purposes only, or who are lessors of aircraft, liabil-

ity for damages caused by the operation of such aircraft even though they have no control over the operation of the aircraft. This bill would remove this doubt by providing clearly that such persons have no liability under such circumstances." U. S. Congressional Code Service, 80th Congress, 2nd Session, *p.* 1836. At the time the federal and state acts were passed the prevailing rule was to enforce such liability. Restatement, Torts, *s.* 520, *comment* b, clause (a) (pub. 1938); see also, 4 A. L. R. (2d), 1306 n. Whether changing conditions now require substantial modification of laws based on the view as expressed in Restatement, Torts, *supra,* that "aviation in its present stage of development is ultrahazardous" is a legislative and not a judicial question. *Cf. Packard* v. *Foster,* 95 N. H. 47, 50. Accordingly we hold the Trial Court correctly charged that causal violation of the state or federal statutes or any rules or regulations thereunder by the pilot of the plane would, in the absence of the plaintiff's contributory negligence, render the defendant Skyhaven liable.

As bearing upon whether there was such causal violation, there is evidence that the defendant was chargeable with knowledge that on the area over which its planes flew there were farms housing horses which might be frightened by low flying planes. It was also findable that the pilot, by using the north-south instead of the east-west runway under existing conditions of low wind velocity, violated a field rule of the State Commission (Rule No. 1) applicable to the Laconia Airport. Had he obeyed the rule he would have flown nowhere near the horse. Evidence was introduced that by operating the plane as low as around 388 feet above the horse when he could have been several hundred feet higher, he violated both Rules 5 and 10 (c) of the State Commission and *ss.* 60.102 and 60.107 (c) of the federal Board which are identical with the state regulations. The jury could readily believe from the testimony that had the pilot flown at 500 feet or higher the horse would not have been frightened and there would have been no accident.

The defendant Skyhaven argues that the rule relative to a minimum altitude of 500 feet does not apply to a take-off and that it was proper for the pilot to travel below this height within the so-called take-off area whether this was necessary or not, or whether it might endanger life or property. Not only does such a construction run contrary to a basic tenet of our tort law, which is the rule of reasonable care in any circumstances, but the explanatory note to Rule 5 of the state regulations provides that "In rural districts the flight of

aircraft at low altitude often causes injury to livestock." The note to Rule 10 (c) states "When flight is necessary at an altitude of less than 500 feet above the surface, the pilot must avoid creating any hazard to persons or property on the surface which may result from such flight." There are similar explanatory notes to the corresponding federal rules 60.102 and 60.107 (c). The meaning which the defendant would have us adopt here has been rejected in principle elsewhere. *Burnham* v. *Beverly Airways*, 311 Mass. 628, and authorities cited.

In addition to the above, Laws 1947, *c.* 281, *s.* 1 amended *s.* 2 of R. L., *c.* 306, which deals with the purpose of the act, by adding a new paragraph as follows: "(d) Providing for the protection and promotion of the public interest and safety in connection with the operation of aircraft." It seems that this amendment as well as common sense bear out the conclusion that these laws and the rules made thereunder were for the protection of persons and property on the ground as well as in the air, and the defendant's claim that they were designed only to prevent accidents in the air cannot be sustained. It follows that there being evidence of their causal violation, the Court properly submitted such issues to the jury as a basis for liability. *MacDonald* v. *Appleyard*, 94 N. H. 362, 365, and cases cited. *Neiswonger* v. *Goodyear Tire & Rubber Company*, 35 F. (2d) 761. The plaintiff argues that the charge and supplemental instructions to the jury did not convey to them this principal that a pilot must use ordinary care, even though he be within the take-off limits and must not unnecessarily fly below the 500 foot minimum to the danger of persons and property. The charge does not appear entirely clear but since there are to be new trials, we need not consider it further.

The plaintiff also claims error in the submission of the issue of his contributory negligence to the jury. This is a difficult question, but under all circumstances we are unable to agree with the Trial Court's conclusion that there was evidence to warrant a finding here against the plaintiff. A recital of the lengthy testimony on this point would serve no purpose, but in essence the facts are these. The plaintiff left his son who was barely two years old in a safe position in the care of his wife, who so far as appears, was a normal, intelligent young mother with nothing to do except to watch this child. We do not believe that her pregnancy, which was the sole disability ascribed to her by the defendants, unfitted her in the circumstances for this task. The defendant Howe himself admitted that after the accident he saw her *"running* across the lawn" toward the little boy. (Em-

phasis supplied.) After leaving the child with its mother, the plaintiff, who knew nothing about horses in general or of this one in particular except that he had noticed it was nervous, went nearly one-quarter of a mile away to hay in a field with two other men including the owner of the horse. He, as a guest, could reasonably expect either of these more experienced men would look after this horse, which was standing hitched to the hayrack they were loading, without advice or directions from him. We do not consider the fact that he did not at all times observe the precise distances between those men, or himself, and the horse or stand ready to leap and seize its bridle is evidence of his negligence here. He was totally inexperienced around farms, this was the first plane to come overhead that morning, and he had no reason to anticipate its sudden appearance, its course, its findably illegally low and noisy flight, or the swift and unexpected consequences which followed. While it is true that the question of a parent's care in leaving a minor child in the custody of a *third* person is ordinarily for the jury (*cf. Chase* v. *Company*, 95 N. H. 483), here one parent left the child in the custody of the other without any reason to believe her incapable of assuming the task. See *Humphreys* v. *Ash*, 90 N. H. 223, 229. See also, *Bullard* v. *McCarthy*, 89 N. H. 158, 164; *Martineau* v. *Waldman*, 93 N. H. 147, 149, 150. In short, we discover no evidence to warrant reasonable men finding that the plaintiff failed to use as much care as an ordinary person should in the situation here and his exceptions to the submission to the jury of this issue are sustained.

The plaintiff also argues that it was error to admit the testimony of long time members, or former members of the Laconia Airport Authority, the owners of the airport (Laws 1941, *c.* 272) and a former manager that they had received no complaints of horses being frightened by planes. The defendant Skyhaven argues that this evidence was admissible to show that it had no notice of this danger and therefore no reason to anticipate it. However, these persons were neither owners nor agents of the defendant Skyhaven, and therefore lack of notice to them of danger was not lack of such notice to the defendant as to whom the testimony was pure hearsay and inadmissible. *Menard* v. *Cashman*, 94 N. H. 428, 433, 434. This exception is sustained. Since there must be a new trial as to all the defendants, we deem it unnecessary to pass on other questions not likely to arise again.

*New trials.*

All concurred.