Jean Marie **MOUNGEY**, Plaintiff,

v.

Lester **BRANDT**, Henry J. Altschwager, Jr., and Ralph E. Plantenberg, Defendants.

No. C–65–97.

United States District Court
W. D. Wisconsin.

Feb. 10, 1966.

Klabacka & Meuer, Madison, Wis., for plaintiff.

Callahan & Arnold, Columbus, Wis., for defendants Brandt and Altschwager.

Lloyd J. Paust, Columbus, Wis., for defendant Plantenberg.

JAMES E. DOYLE, District Judge.

The complaint reveals no diversity of citizenship. The jurisdiction of this court is invoked by the allegation that this is an action "arising under the Federal Aviation Act of 1958, as amended, 72 Stat. 731; 49 U.S.C.A., Title Transportation, Sections 1301–End." It is also alleged that the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $10,000. The plaintiff alleges that, as a passenger in an airplane, she was injured as a result of the negligence of the defendants. It is alleged that the airplane had been certified in accordance with Civil Air Regulations to a partnership consisting of the defendants. It is further alleged that the accident was caused by one of the defendants in operating the aircraft negligently in that he violated several safety regulations promulgated by the Federal Aviation Agency pursuant to the Federal Aviation Act.

Separate motions for dismissal have been filed by the defendant Plantenberg and by the defendants Brandt and Altschwager. The grounds for dismissal as stated in the two motions are: (a) that this court lacks jurisdiction because an action by the same plaintiff against the same defendants, apparently dealing with the same subject matter, had previously been commenced in the Circuit Court for Columbia County, Wisconsin; (b) that the complaint fails to state a cause of action which arises under the Constitution, laws, or treaties of the United States; and (c) that the complaint fails to state a claim against defendants upon which relief can be granted.

## EFFECT OF COLUMBIA COUNTY ACTION

The complaint herein was filed with the clerk on August 6, 1965. Service of the summons and complaint was made upon each of the three defendants by the United States Marshal on August 17, 1965. On August 10, 1965, there was served upon each of these same defendants a summons in an action in the Circuit Court of Columbia County, Wisconsin, in which the same plaintiff and the same defendants were named. Defendants assume that the subject matter of the two actions is identical, although this cannot be established from the summons served in the state court action. Having made this assumption, the defendants contend, apparently on the principle of priority, that the state court action was commenced prior to the commencement of this action in the federal court, and that the federal court action must yield to the state court action. For the purpose of this opinion, we will also assume, without deciding, that the subject matter of the two actions is identical.

■ As between the federal and state courts, the principle of priority is applied only to actions *in rem* and not to actions *in personam*. 20 Am.Jur.2d, Section 135; Penn General Casualty Co. v. Commonwealth of Pennsylvania, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935); and Princess Lida of Thurn and Taxis v. Thompson, 59 S.Ct. 275, 83 L. Ed. 285 (1939). In Penn General Casualty Co., 294 U.S. 189, at 195, 55 S.Ct. 386, at 389, the court commented:

> "Where the judgment sought is strictly *in personam*, for the recovery of money or for an injunction compelling or restraining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as *res judicata* in the other."

See also Grubb v. Public Utilities Commission, 281 U.S. 470, 476, 50 S.Ct. 374, 74 L.Ed. 972 (1930).

■■ Even if the principle of priority were to be applied to this *in personam* action, however, the federal action would enjoy priority. In the federal courts, a civil action is commenced by filing a complaint with the court. Rule 3, Federal Rules of Civil Procedure. Thus the federal court action was commenced August 6. In Wisconsin courts a civil action is commenced by the serv-

ice of a summons. Thus the Wisconsin action was commenced August 10. A different result may occur if process in the federal court does not issue in due course after the complaint has been filed. This is not our case. In Penn General Casualty Co., 294 U.S. 189, 196, 55 S. Ct. 386, 389, the court said, with respect to actions *in rem:*

> "But, when the two suits have substantially the same purpose and the jurisdiction of the courts is concurrent, that one whose jurisdiction and process are first invoked by the filing of the bill is treated as in constructive possession of the property and as authorized to proceed with the cause. [Citations omitted.] Jurisdiction thus attaches upon the filing of the bill of complaint in court, at least where process subsequently issues in due course."

▇ Therefore, the comencement of the action in the state court does not require the dismissal of this action in the federal court.

## WHETHER MATTER IN CONTROVERSY ARISES UNDER LAWS OF UNITED STATES

The defendants' motions are somewhat ambiguously put:

> "to dismiss the action on the ground that the court lacks jurisdiction over the subject matter because the parties are all residents of the State of Wisconsin, and the complaint fails to disclose a cause of action arising under the constitution, laws or treaties of the United States, or any other basis for federal jurisdiction" (part of motion of defendants Brandt and Altschwager);

> "to dismiss the action because the complaint fails to state a claim against the defendants upon which relief can be granted" (part of motion of defendants Brandt and Altschwager);

> "to dismiss the plaintiff's action on the ground that the Court lacks jurisdiction thereof as the complaint does not allege diversity of citizenship nor does it state facts constituting a cause of action over which the Court has jurisdiction" (part of motion of defendant Plantenberg);

> "to dismiss the action on the ground that the complaint fails to state a claim against defendant * * * upon which relief can be granted" (part of motion of defendant Plantenberg).

▇ However the motions may have been stated, the threshold question appears to be jurisdictional; that is, whether the matter in controversy "arises under the Constitution, laws, or treaties of the United States." 28 U.S.C., Sec. 1331 (a). There is no need here to recite the long history of the effort to fix the meaning of the words "arises under" in this historic statute. Wright, Handbook of the Law of Federal Courts (1963), pp. 48–52. We construe them to mean that the rule of substance under which the plaintiff claims the right to have a remedy must be the product of federal law; her claim for relief must be founded "directly" on the laws of the United States. Wechsler, "Federal Jurisdiction and the Revision of the Judicial Code", 13 Law and Contemp.Prob. 216, 225 (1948); Mishkin, "The Federal 'Question' in the District Courts", 53 Columbia L.Rev. 157, 165 (1953). Whether these tests are met is to be determined solely by looking to the allegations of the complaint. Gully v. First Nat. Bank, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Annotation, "What actions arise under Constitution, laws and treaties of United States; general principles", 12 A.L.R., 41–60.

The complaint alleges: that the action arises under the Federal Aviation Act, as amended, 72 Stat. 731; 49 U.S.C., "Sections 1301–End"; that the defendants, as a partnership or joint venture, were doing business "as a business and pleasure aircraft company", using the registered airplane in question in this business; that at the time of the accident the plaintiff was a passenger for hire in the said airplane; that plaintiff was

injured as a direct and proximate result of the negligence of the defendants; and that this negligence consisted in defendant Brandt's violations of five requirements imposed by the Civil Air Regulations of the Federal Aviation Agency.

The first item of alleged negligence consists in defendant Brandt's failure, while acting as pilot, to have in his possession a pilot certificate, in violation of Section 43.40 of the Civil Air Regulations.[1] The second consists in his failure, while acting as pilot, to have in his possession a medical certificate, in violation of Section 43.41 of the Civil Air Regulations.[2] The third consists in his piloting the aircraft although it was not equipped with forward and rear position lights, in violation of Section 60.23(a) of the Civil Air Regulations.[3] The fourth consists in his piloting an aircraft carrying a passenger, at 9:30 p. m. on August 19, 1962, although, within the preceding 90 days, he had not made at least five nighttime takeoffs and five nighttime landings to a full stop, in violation of Section 43.68(b) of the Civil Air Regulations.[4] The fifth consists in his executing "an approach whereby he landed in a field short of the runway and crashed into a ditch bordering the runway, causing damage to the aircraft and injuries to his passenger and thereby operated said aircraft in a careless manner so as to endanger the lives and property of others, and thereby violated Section 60.12 of the Civil Air Regulations."[5]

It is true that it may be difficult to prove a causal connection between the pilot's failure then to have in his possession a pilot's license or a medical certificate, on the one hand, and the faulty approach, on the other, unless (as the complaint does not allege) he was in fact untrained or physically unfit. It is also true that it may be difficult to prove a causal connection between the absence of forward and rear position lights, on the one hand, and a faulty approach, on the other. If only these items of alleged negligence were alleged, we would be disposed to regard as inadequate the allegation that the rule of substance under which plaintiff claims her remedy is founded directly on laws of the United States.

█ However, given the opportunity, plaintiff may be able to establish a causal connection between the pilot's alleged failure sufficiently to practice nighttime landings during the preceding 90 days, on the one hand, and the alleged faulty approach, on the other. Also, although the generality and vagueness of both the complaint and the regulation are troublesome in this respect, plain-

---

1. Section 43.40 of the Civil Air Regulations now appears as 14 C.F.R., Chap. I, Part 61.3(a) : "No person may, within the United States, act as pilot in command * * * of a civil aircraft of United States registry unless he has in his personal possession a current pilot certificate issued to him under this part."

2. Section 43.41 of the Civil Air Regulations now appears as 14 C.F.R., Chap. I, Part 61.3(c) : "* * * no person may act as pilot in command of an aircraft under a certificate issued to him under this part, unless he has in his personal possession an appropriate current medical certificate issued under Part 67 of this chapter. * * *."

3. Section 60.23(a) of the Civil Air Regulations now appears as 14 C.F.R., Chap. I, Part 91.73: "No person may, during the period from sunset to sunrise * * * —(a) Operate an aircraft unless it has lighted position lights; * * *."

4. Section 43.68(b) of the Civil Air Regulations now appears as 14 C.F.R., Chap. I, Part 61.47(b) : "No person may act as pilot in command of an aircraft carrying passengers during the period beginning 1 hour after sunset and ending 1 hour before sunrise (as published in the American Air Almanac) unless, within the preceding 90 days, he has made at least five takeoffs and five landings to a full stop during that period of the day. This period does not apply to operations requiring an airline transport certificate."

5. Section 60.12 of the Civil Air Regulations now appears as 14 C.F.R., Chap. I, Part 91.9: "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."

tiff's allegation that the aircraft was operated in "a careless manner so as to endanger the lives and property of others" sufficiently alleges a violation of 14 C.F.R., Chap. I, Part 91.9.

" * * * [T]he party who brings a suit is master to decide what law he will rely upon and therefore does determine whether he will bring a 'suit arising under' the patent or other law of the United States by his declaration or bill." The Fair v. Kohler Die Co., 33 S.Ct. 410, 228 U.S. 22, 25, 57 L.Ed. 716 (1913). This plaintiff has sufficiently exercised her "mastery". We cannot say, from her complaint, that she is not "really relying" upon federal law. The Fair, at 25, 33 S.Ct. 410. We conclude that the complaint spells out a controversy which "arises under" the laws of the United States. This court has jurisdiction.

## AVAILABILITY OF FEDERAL RELIEF SOUGHT

■■ By her pleading, plaintiff may compel the court to take jurisdiction. Once in court, however, she cannot dictate the relief she may receive. She may fail because, as a matter of law, the facts alleged in her complaint do not entitle her to the relief she seeks. This requires a judgment on the merits, as distinct from a jurisdictional determination, to which we now turn. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

■ None of the provisions of the federal statutes upon which plaintiff relies, and none of the administrative regulations thereunder upon which plaintiff relies, expressly creates the remedy of damages at the suit of a party allegedly injured as a result of a violation of the statutes or regulations. The statutory scheme is to authorize the Administrator to promulgate safety regulations. 49 U.S.C., Sec. 1421. One of the regula-

tions, as noted above, provides: "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." 14 C.F.R., Chap. I, Part 91.9. "It shall be unlawful" for any person to violate any of the regulations. 49 U.S.C., Sec. 1430. Such a violation is "subject to a civil penalty of not to exceed $1000 for each such violation." 49 U.S.C., Sec. 1471. Provision is made for the collection of such a penalty. 49 U.S.C., Sec. 1473. Aggrieved persons may file complaints with the Agency; this administrative procedure can result only in orders of prospective application. 49 U.S.C., Sec. 1482. The Administrator may reinspect aircraft and re-examine airmen, from time to time, and may amend, suspend, or revoke certificates and licenses, whether for equipment or personnel. 49 U.S.C., Sec. 1429; 14 C.F.R., Chap. I, Part 13.19. He may seize the aircraft. 14 C.F.R., Chap. I, Part 13.17. The Board or Administrator (and, with respect to 49 U.S.C., Sec. 1371, providing for certificates of public convenience and necessity, any party in interest) may apply to a United States district court for injunctive relief against any person violating the statutes or regulations, and United States Attorneys may bring proceedings for the enforcement of the statutes and regulations and for the punishment of violations. 49 U.S.C., Sec. 1487.

Section 1506 of Title 49, U.S.C., provides: "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

■ From the foregoing it is clear that if the statutes comprising and affecting the safety features of the Federal Aviation Program, or the administrative regulations thereunder,[6] create

---

6. Whether a civil remedy may be inferred from an administrative regulation pursuant to statute, rather than from a statute itself, is a question not pursued here. For the purpose of this decision, it is assumed that such an implication may arise from a regulation as readily as from a statute. See Neiswonger v. Goodyear Tire and Rubber Company, 35 F.2d 761 (N.D.E.D.Ohio, 1929), in which a civil remedy was inferred from an administrative regulation promulgated under a statute.

a remedy for damages at the suit of an injured private party, it can only be by implication. Thus, the ultimate issue is whether the remedy sought by this plaintiff is to be inferred from these statutes or regulations, or both.

"Increasingly, the tendency in the federal courts has been to infer private rights of action from federal statutes unless to do so would defeat manifest congressional purpose." Brennan, J., dissenting in Wheeldin v. Wheeler, 373 U.S. 647, 653, 662, 83 S.Ct. 1441, 10 L. Ed.2d 605 (1963). It is on such decisions that plaintiff here relies. Neiswonger v. Goodyear Tire and Rubber Company, 35 F.2d 761 (N.D.E.D.Ohio, 1929); Reitmeister v. Reitmeister, 162 F.2d 691, 694 (C.A.2d, 1947); and Fitzgerald v. Pan American World Airways, 229 F.2d 499 (C.A.2d, 1956).

Traditional doctrines governing the implication of civil remedies by statutes making certain conduct criminal or subjecting certain conduct to civil penalties (A.L.I., Restatement of Torts—Negligence (1934), Sections 286–288; Morris, "The Relation of Criminal Statutes to Tort Liability", 46 Harvard L.Rev. 453 (1933); Note, "The Use of Criminal Statutes in the Creation of New Torts", 48 Columbia L.Rev. 456 (1948)) may require modification in a federal system. Thus, the implication of a civil remedy by a federal regulatory statute may bring to the federal district courts litigation which might better remain in the state courts.

Many factors obviously affect the proper apportionment of judicial functions as between federal district courts and state courts. When no national interest compels that certain litigation be brought to the federal district court, when a wholly satisfactory state forum is available to the parties, and when the Constitution of the United States and the federal statutes permit the federal court to choose whether to receive the case, there is much to be said for withholding a federal remedy. Note, "Implying Civil Remedies from Regulatory Statutes", 77 Harv.L.Rev. 285, 292–294 (1963).

The national interest in safety in civil aeronautics is adequately protected by the network of statutory and administrative procedures and sanctions expressly created by the Federal Aviation Program, as outlined above. No persuasive reason suggests itself why the efficacy of the Program need be fortified by the creation, by implication, of a civil remedy in the federal court. This plaintiff may sue, indeed she apparently has done so, in the state courts. By 49 U.S.C., Sec. 1506, Congress expressed its intention that remedies existing "at common law or by statute" not be abridged or altered. No inadequacies in the state remedy have been called to our attention, and we are aware of none. In this respect, among others, the case differs from Wills v. Trans World Airlines, Inc., 200 F.Supp. 360, 365 (S.D.C.D., Cal., 1961), and also Reitmeister, supra. In Wills, the federal court examined the possible remedies in the state court and found them inadequate. In Reitmeister it appears that if the civil remedy had not been inferred from the federal statute, none would have been available in any forum.

These considerations were not discussed in Neiswonger, supra. There the complaint alleged that a dirigible had been operated at an altitude lower than the 500-foot minimum set by the Secretary of Commerce pursuant to the Air Commerce Act of 1926. As a result, a team of horses had been frightened, and plaintiff's injuries resulted. The federal district court overruled a demurrer to the complaint, holding that the plaintiff was in the class of persons intended to be benefited by the 500-foot rule, "and that his right to recover damages for its violation, though not expressed, is implied." 35 F.2d 761, at 762.

In Mozingo v. Consolidated Construction Company, 171 F.Supp. 396 (E.D.Va., 1959); Dennis v. Southeastern Aviation, Inc., 176 F.Supp. 542 (E.D.N.D.Tenn., 1959); Moody v. McDaniel, 190 F.Supp. 24 (N.D.E.D., Miss., 1960); and Porter

v. Southeastern Aviation, Inc., 191 F. Supp. 42 (M.D.Tenn., 1961), the *Neiswonger* precedent has been declined. Plaintiff seeks to avoid the force of these cases because they involved actions for wrongful death. It is true that it would be difficult not only to infer from the federal aviation statutes and regulations a civil remedy for injuries, but also to infer the existence of a right of action (wrongful death) not known to the common law. However, the disapproval of *Neiswonger* expressed in these cases encourages us, for different reasons, to refrain from following it.

We consider that the court in *Neiswonger* was too readily disposed to infer the civil remedy from the Air Commerce Act of 1926, and the regulation promulgated thereunder by the Secretary of Commerce, when the consequence was to bring to the federal district court an action more appropriately determinable in the state court. In our view, such an inference from the statutes comprising and affecting the safety regulation features of the Federal Aviation Program, and from administrative regulations thereunder, should be drawn no more readily than with respect to the Safety Appliance Act. 45 U.S.C., Sec. 1 et seq. With respect to the Safety Appliance Act, governing railroads, the implication of a civil remedy for a passenger injured because of a violation of the Act has been denied. Jacobson v. New York, N. H. & H. R. Co., 206 F. 2d 153 (C.A.1st, 1953), affirmed per curiam, 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067 (1954). The procedural difficulties in a federal district court which would flow from such an implication are detailed in Jacobson, 206 F.2d, at 156–157: " * * * [I]ssues bearing upon the right to recover, relating, for example, to common law doctrines of last clear chance, the defense of contributory negligence, or proximate cause" could be

dealt with in the federal district court only by the development of a body of common law rules paralleling, but quite possibly differing from, those of the state in which the federal court sits. In the absence of a compelling national interest, such as an interest in uniformity in result in civil suits for injuries to passengers in railroads or airplanes, it would be unwise to invite such problems by inferring the civil remedy claimed.[7]

Plaintiff's principal reliance is on *Fitzgerald,* supra. There were factors, noted in the opinion of the Court of Appeals, which significantly distinguish the case from ours. The issue arose under the economic regulation sections of the Federal Aviation Program (49 U.S.C., Secs. 1371–1387), rather than the safety regulation sections as here. Title 49, U.S.C., Sec. 1304 contains this declaration:

> "There is recognized and declared to exist in behalf of any citizen of the United States a public right of freedom of transit through the navigable airspace of the United States."

The complaint in *Fitzgerald* alleged that plaintiffs had been prevented from continuing a certain flight in their assigned first class seats, and that the refusal was motivated by racial and color prejudice, in violation of 49 U.S.C., Sec. 1374 (b), which provides:

> "No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, locality, or description of traffic in air transportation in any respect whatsoever or subject any particular person, port, locality, or description of traffic in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

---

7. *Jacobson* involved an action by the administratrix of the estate of the decedent, first, for decedent's pain and suffering, and, second, for wrongful death. The court noted that at common law, the action for pain and suffering did not survive and that the action for wrongful death did not exist, but it held that this circumstance "reinforced" the conclusion it had already reached.

The Court of Appeals noted (229 F. 2d 499, at 502):

"Congress sought uniformity in the practices of those subject to this Act. It is by no means clear that, in all states and territories, the common-law rules would render unlawful racial differentiations in accord with the 'separate but equal doctrine', whereas, in the light of recent Supreme Court decisions, we must construe Section 484(b) [now 49 U.S.C., sec. 1374(b)] so that that doctrine will not apply."

This explanation might have served adequately the Court's reversal of the district court's order granting a motion to dismiss the complaint. Had the civil remedy not been inferred, plaintiffs might have been left without a remedy in any forum; possibly, they might have found a remedy in the courts of some states, but not in those of others. To vindicate the national interest in the "public right of freedom of transit", declared in 49 U.S.C., Sec. 1304, it may well have been necessary to fortify the criminal sanction (see 49 U.S.C., Sec. 1472) attaching to a violation of 49 U.S. C., Sec. 1374(b), by inferring a civil remedy enforcible in a federal district court.

Unfortunately, the Court expressed the view that such considerations were not controlling. 229 F.2d, at 502. Its holding was straightforward (229 F.2d, at 501–502):

"[49 U.S.C., Sec. 1374(b)] is for the benefit of persons, including passengers, using the facilities of air carriers. Consequently, by implication, its violation creates an actionable civil right for the vindication of which a civil action may be maintained by any such person who has been harmed by the violation. * * * [Jacobson, supra, held that the Safety Appliance Act] did not create a right but merely imposed a higher standard of care in suits based upon a state common-law right.

"That is not true of the Act here involved. We think it created a new federal right."

Having concluded that 49 U.S.C., Sec. 1374(b) created a new federal right, the Court went on to hold that a suit based upon such right is within 28 U.S.C., Sec. 1331, and perhaps Sec. 1337.

To the extent that the Court in *Fitzgerald* chose to infer the civil remedy without reference to a peculiarly national interest in thus effectuating the policies of the Act, and without reference to the unavailability or inadequacy of remedies in the state court, we decline to follow its lead.

▆▆▆ We hold that the complaint herein fails to state a cause of action upon which a remedy can be awarded to the plaintiff in this court.

### DOCTRINE OF PENDENT JURISDICTION

▆▆▆ Presumably, this complaint states a cause of action under Wisconsin law for personal injury caused by defendants' negligence. Having disposed of the asserted federal cause of action adversely, on motion, before defendants have answered and before the trial stage, we are not obliged, by the doctrine of pendent jurisdiction, to deal with the possible cause of action under Wisconsin law. Wojtas v. Village of Niles, 334 F. 2d 797 (C.A.7th, 1964), cert. den., 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965); Vechiola v. City of Chicago, 244 F.Supp. 45, 46 (N.D.E.D.Ill., 1965); Rogers v. Provident Hospital, 241 F. Supp. 633, 639 (N.D.E.D.Ill., 1965); Salganik v. Mayor and City Council of Baltimore, 192 F.Supp. 897, 902–903 (D.Md., 1961); State of Georgia v. Wenger, 94 F.Supp. 976, 982–983 (E.D.Ill., 1950), affirmed 187 F.2d 285, 287–288 (C.A.7th, 1951), cert. den. 342 U.S. 822, 72 S.Ct. 41, 96 L.Ed. 621 (1951), rehearing den., 342 U.S. 874, 72 S.Ct. 105, 96 L.Ed. 657 (1951); Magruder, C. J., concurring, Strachman v. Palmer, 177 F.2d 427, 433–434, 12 A.L.R.2d 687 (C.A.1st, 1949); Bell v. Hood, 71 F.Supp. 813, 819–821 (S.D.C.D.Cal., 1947) (on remand). But

see Stone, C. J., dissenting, Bell v. Hood, 327 U.S. 678, 686, 66 S.Ct. 773, 90 L.Ed. 939 (1946); and Brennan, J., dissenting, Wheeldin v. Wheeler, 373 U.S. 647, 653, 657–659, 83 S.Ct. 1441. See Hart & Wechsler, The Federal Courts and the Federal System (1953), 808; Note, "The Evolution and Scope of the Doctrine of Pendent Jurisdiction in the Federal Courts", 62 Columbia L.Rev. 1018, 1025–1026, 1045 (1962). More than one ground for so holding may exist, but it is sufficient that this action has not reached the trial stage in federal court and that no economy in time or money, and no greater expedition, would be realized if this court were now to undertake to deal with the possible Wisconsin cause of action on its merits.

Should another court be called upon to evaluate the effect of our order herein upon a possible cause of action under Wisconsin law, our intention should be noted that the dismissal of this action is without prejudice to such a possible cause of action in the state court.

This action is dismissed on the ground that the complaint fails to state a cause of action upon which a remedy can be awarded to the plaintiff in this court.