Malinda J. ROSDAIL, James Maucker, and Le Roy H. Redfern, Administrator of the Estate of Vernon O. Dishman, Deceased, Plaintiffs,

v.

WESTERN AVIATION, INC., a Colorado corporation; Richard J. Kezlan; and John Doe, Administrator of the Estate of Chad Allan Arnold, Deceased, Defendants.

Civ. A. C–928.

United States District Court
D. Colorado.

Jan. 13, 1969.

William H. Erickson and James J. Morrato, Denver, Colo., for plaintiffs.

W. Robert Ward and Michael E. Oldham, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

This matter is before the Court on defendants' motion to strike plaintiffs' amended allegation, H–1, which states that the negligence and carelessness of the pilot in violation of statute and regulation are to be imputed to defendants Richard J. Kezlan and Western Aviation, Inc., the respective owner and lessor of the aircraft, as a matter of law pursuant to the Federal Aviation Program, 49 U.S.C. § 1301(26).[1] Defendants contend that the allegation is immaterial, impertinent and scandalous. The parties have filed briefs and the Court has heard oral argument. We conclude that the allegation should be stricken from this action as having no application to the facts and claims therein.

The facts are briefly as follows. On November 23, 1966 a Cessna 172 aircraft crashed near Elk Horn, Shelba County, Iowa, killing the pilot Chad Allan Arnold who was a resident of Colorado, one passenger Vernon O. Dishman who was a resident of Colorado, and seriously injuring two other passengers, Malinda J. Rosdail and James Maucker respective residents of Illinois and Iowa. The aircraft was on flight from Loveland, Colorado, to destinations in Iowa and Illinois. At the time of the crash, the aircraft was registered to and owned by Richard J. Kezlan; it was under lease by him to Western Aviation, Inc.; and it was under lease by Western Aviation, Inc., to the pilot Arnold, whose negligence plaintiffs seek to impute to defendants Kezlan and Western Aviation, Inc., as owner and lessor respectively. Kezlan is a Colorado resident and Western Aviation, Inc., is incorporated and has its principal place of business in Colorado. The leases herein were with the knowledge and intent that the aircraft be used to carry persons for hire. And at the time of the crash, Rosdail, Maucker and Dishman, for consideration, had hired Arnold in Colorado to carry them to their Iowa and Illinois destinations.

No allegation of an employment or principal-agent relationship between the pilot and either the owner or the lessor of the aircraft is made; the pleadings indeed present a bailment relationship. We note for purposes of the discussion which follows that two plaintiffs, Rosdail and Maucker, bring personal injury suits, while one of the plaintiffs, Le Roy H. Redfern, is the administrator of the Iowa estate of Dishman and sues in wrongful death under Iowa law. With respect to these claims the pleadings are replete with various legal theories for recovery running from simple negligence claims against the pilot, owner, and lessor to liability lodged against the owner and lessor based upon the ultrahazardous activity of leasing aircraft. There is a pending question before this Court whether Iowa law, which imputes a bailee's negligence to his bailor with respect to aircraft injuries, or Colorado law which does not, is to be applied to the facts of the case. We concern ourselves here, however, only with the al-

---

1. (26) "Operation of aircraft" or "operate aircraft" means the use of aircraft for the purpose of air navigation and includes the navigation of aircraft. Any person who causes or authorizes the operation of aircraft, whether with or without the right of legal control (in the capacity of owner, lessee or otherwise) of the aircraft, shall be deemed to be engaged in the operation of aircraft within the meaning of this chapter. 49 U.S.C. § 1301(26).

legation that the pilot's negligence in violation of the federal statute and regulations is to be imputed to Western Aviation, Inc., and Kezlan, pursuant to the Federal Aviation Program, § 1301 (26).

We note at the outset that plaintiffs have characterized their allegation in such vague terms—the negligence is to be imputed "as a matter of law" pursuant to the federal statute—that it presents two possible approaches for the desired result. One, Congress through the Supremacy Clause of the United States Constitution has defined the legal relationship between owners and lessors of aircraft and their bailees not only for purposes of the Federal Aviation Program, but for purposes of tort liability suits entertained by the state courts. As a consequence, state courts would have to recognize owner and lessor liability for bailee negligence even were state law to the contrary. The second approach is that a private right of action has been created by the Federal Aviation Program § 1301(26). Accordingly, plaintiffs could sue on the federal cause of action even though no state common or statutory law would allow such a recovery. We take up this latter approach first.

1. Not only does plaintiffs' allegation charge a violation of federal statute and regulations promulgated thereunder, but it seeks to hold liable persons who would not be subject to liability in tort damages under much state common and statutory law. Consequently, the allegation is broader than one which would simply claim a violation of statute to be negligence per se or prima facie evidence of negligence. In essence, plaintiffs' allegation is an attempt to state a claim for damages against the owner and lessor of the aircraft as arising from the federal statute. Since the statute does not expressly create a private cause of action for civil damages, such can arise only by implication. Absent any compelling national interest, a need for national uniformity, or the availability and adequacy of state forums, however, we would not imply a private cause of action from the Federal Aviation Program. See, Yelinek v. Worley, 284 F.Supp. 679 (D.Va.1968); Moungey v. Brandt, 250 F.Supp. 445 (D.Wis.1966).

We are aware that there has been an increasing tendency by federal courts to infer private rights of action from federal regulatory statutes where manifest Congressional intent and purpose would not be defeated. See, Wheeldin v. Wheeler, 373 U.S. 647, 662, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963) (Brennan, J., dissenting). However, we find no compelling reason to create a civil remedy for damages from the definitional section of the Federal Aviation Program, § 1301 (26). National uniformity with respect to the licensing, inspection and registration of aircraft and airmen is clearly accomplished within the structure of the Program and regulations promulgated thereunder. The Program's efficacy requires no apparent reliance on an implication of a civil remedy from § 1301 (26). Moungey v. Brandt, supra. Furthermore, the states traditionally and satisfactorily have provided the forums for suits in tort. State law has predominated the law of torts; established the legal relationships between those who may recover and those who are liable; created the standards of care; provided for defenses; and resolved procedural difficulties. Were we to imply a private cause of action from the Federal Aviation Program, the federal courts would be obliged to fashion a body of federal tort common law. In the absence of compelling reasons such a course is unwise. It would only open the federal courts for litigation which was never intended by Congress to be handled by federal courts absent diversity jurisdiction. It should be noted that the cases which have implied a civil remedy from the Federal Aviation Program and its predecessor are to be distinguished from the instant case largely because the courts therein found compelling reasons to support the implication. See, Fitzgerald v. Pan American World Airways, 229 F.2d 499

(2d Cir. 1956) (national uniformity sought, no adequate administrative redress within the statute); Town of East Haven v. Eastern Airlines, Inc., 282 F.Supp. 507 (D.Conn.1968) (lack of administrative remedy); Wills v. Trans World Airlines, Inc., 200 F.Supp. 360 (D.Cal.1961) (inadequate state remedy and administrative relief, compelling national interest).

The conclusion not to imply a civil remedy also makes eminent sense when considered in the context of a wrongful death action. At common law there existed no right of action for wrongful death; such an action is a pure creature of statute. By statute it is determined in whom accrues the right of action, by when it must be instituted, what limitations exist on the amount of recovery, etc. In Moody v. McDaniel, 190 F.Supp. 24 (D.Miss.1960), the court in discussing whether a suit for wrongful death could be implied from the Federal Aviation Act posed the hypothetical question whether the suit could be maintained without the state wrongful death statute. Its answer is dispositive of our problem. The court stated:

> * * * Could plaintiffs pursue their stated claims in this court in the absence of a wrongful death statute in the State of Mississippi? Neither the statutes nor the regulations relied on by plaintiffs [the Federal Aviation Act and regulations] expressly create such a cause of action nor name the beneficiaries thereof, nor prescribe how, if at all, contributory negligence, comparative negligence, assumption of risk, measure of damages, limit of recovery or any other yardstick are to be applied on trial. Nor do these statutes or regulations fix any period of limitation within which suit must be filed. Thus, it is obvious that any trial court, under these circumstances, that attempted to proceed as if the cause were a "case arising" under the Constitution or laws of the United States would be hopelessly lost in a no man's land of undeveloped law. 190 F.Supp. at 28.

Consonant with the court's ruling, the majority of courts have held that a suit for wrongful death should not be implied from the Federal Aviation Act or its predecessors. Porter v. Southeastern Aviation, Inc., 191 F.Supp. 42 (D.Tenn. 1961); Dennis v. Southeastern Aviation, Inc., 176 F.Supp. 542 (D.Tenn.1959); Mozingo v. Consolidated Constr. Co., 171 F.Supp. 396 (D.Va.1959). We agree with the statement of Judge James E. Doyle of the Wisconsin Federal District Court in Moungey v. Brandt that it would be difficult not only to infer a private right of action for injuries, but to infer the existence of a wrongful death action not known to common law. 250 F.Supp. at 452.

If plaintiffs' allegation is read as attempting to state a cause of action based upon the Federal Aviation Program, § 1301(26), then we would be forced to dismiss it as failing to state a claim either for personal injury or for wrongful death upon which relief can be granted.

2. Plaintiffs' own phrasing of the allegation appears to treat the Federal Aviation Program, § 1301(26), as having application on this tort suit simply because the Federal Aviation Program is an exhaustive effort of Congress to completely regulate airflight. The effect of § 1301(26), urged by plaintiffs, is to alter common law tort liability to include certain persons who under common law would not have been charged with liability, to wit, bailors, lessors or permittors. We disagree, however, that Congress intended to alter common law principles with a definitional section of a regulatory scheme. The Federal Aviation Program regulates the licensing, inspection and registration of aircraft and airmen. It makes no provision for its application to tort liability and in fact provides that nothing in the Program shall abridge or alter the remedies now existing at common law or by statute. 49 U.S.C. § 1506. Responsibility placed upon owners and lessors by § 1301(26) arises merely in the context of violations of the Program and regula-

tions promulgated pursuant thereunder. Furthermore, responsibility is in the nature of express civil and criminal penalties as provided for in §§ 1471, 1472 and 1474 of the Program.

Plaintiffs argue that their contention is supported by the House Report No. 2091 to an amendment to the Civil Aeronautics Act of 1938. 48 U.S.Code Cong. Service, p. 1836 (1948). The amendment provides in essence that no persons who merely have a security interest in aircraft or who are lessors of thirty days or more shall be liable for property or personal damages caused by an aircraft unless those persons be in actual possession or control at the time of such injury. 49 U.S.C. § 1404. The House Report states in part:

> Provisions of present Federal and State law might be construed to impose upon persons who are owners of aircraft for security purposes only, or who are lessors of aircraft, liability for damages caused by the operation of such aircraft even though they have no control over the operation of the aircraft. This bill would remove this doubt by providing clearly that such persons have no liability under such circumstances. 48 U.S.Code Cong. Service, p. 1836 (1948).

It is clear elsewhere from this report that the amendment was passed in order to encourage the financing of purchases of new aircraft by removing the obstacle of possible liability for damages caused by aircraft. The report, however, neither condones nor repudiates a construing of § 1301(26) to impute liability to owners and lessors. It only recognizes that this section as well as other more specifically worded statutes may be so construed. We cannot accept the interpretation of the report which plaintiffs urge upon us. It is not clear that Congress by this exemption intended that owners and lessors should incur civil liability contrary to common law.

Plaintiffs have cited several cases which have held or by express dicta adopted the position that § 1301(26) does impute the negligence of a bailee or lessee to his respective bailor or lessor. Hays v. Morgan, 221 F.2d 481 (5th Cir. 1955); Sosa v. Young Flying Serv., 277 F.Supp. 554 (D.Tex.1967); Lamasters v. Snodgrass, 248 Iowa 1377, 85 N.W.2d 622 (1957); Hoebee v. Howe, 98 N.H. 168, 97 A.2d 223 (1953). Since we have determined not to follow these decisions, a brief discussion of them is in order. In *Hoebee,* the court upheld a lower court's instruction that the casual violation of the state and federal statutes (equivalents of § 1301(26) of the Federal Aviation Program) and their prospective regulations promulgated thereunder by the pilot (who was neither an employee nor an agent of the owner, but had rented the aircraft), in the absence of plaintiff's contributory negligence, would render the owner liable in damages. It reasoned that from a reading of the state statutes the clear intent of the state legislature was to place responsibility on owners for the conduct of those they entrusted with the aircraft; the same held true for the federal statute, the court noting the exemption for security holders and lessors of thirty days or more discussed above. The court appears to have placed importance in the fact that at the time both statutes were passed the prevailing rule of law governing liability for loss caused by aircraft was to enforce liability against owners, citing the Restatement, Torts, § 520, comment b, clause (a) (1938) which dealt with ultrahazardous activity. Assuming that the law at the time of the case was as just stated, and the opinion so reads, then the effect of the lower court's instruction was only to state the standard of care and not to broaden liability with respect to those persons who would be subject to liability. Under the law of ultrahazardous activity the owner would have been liable for his bailee's negligence notwithstanding the federal statute. Consequently, common law with respect to the liability of a bailor was not altered by the statute. This reading of the case is significant, because it shows that the court was not faced with any

of the considerations which should be accounted for and resolved before it is determined that the Federal Aviation Program, § 1301(26), affects the common law legal relationship of a bailor and bailee for purposes of tort liability.

In *Hays,* the Fifth Circuit interpreted a Mississippi state statute which contained the identical language to § 1301(26). The suit involved a claim for damages for personal injury caused by the negligent operation of an aircraft. The pilot charged with negligence had bailed the aircraft and the bailors had retained the right to direct how and when certain crops were to be dusted and sprayed. The district court allowed the claim as against the owner-bailors regardless of whether they and the pilot were joint venturers or partners. The Fifth Circuit upheld liability against the owners on the ground that the Mississippi statute intended to protect the public from the "negligence and financial irresponsibility of pilots". 221 F.2d at 482. The court noted that the Mississippi statute could be compared to the statutes of some states which impute the negligence of a driver to the insurer when the insurer has consented to the driving. And, as in *Hoebee,* the court made reference to the federal amendment discussed above as evincing Congressional intent to hold owners and lessors liable in damages as operators. It must be remarked that although the court did not have a question of the applicability of § 1301(26) to the facts before it, it did deal with a question of the applicability of the federal exemption. The owners of the aircraft had attempted to qualify themselves under the exemption. The court stated that the facts did not support their qualification; no mention of the inapplicability of the exemption was made. It is apparent from the case that the Fifth Circuit has indicated that it would impute negligence to owners and lessors contrary to common law and via § 1301(26) of the Federal Aviation Program were it faced with the proper factual situation. However, the *Hays* case merely suggested the proposition and is not persuasive in our decision. How the Fifth Circuit would handle a suit based solely upon § 1301(26), as in *Yelinek, supra,* is only speculation, the indulgence in which we deem unnecessary.

*Lamasters, supra,* adds little to the *Hays* and *Hoebee* decisions, and indeed agrees with their reasoning and conclusions. The court therein cited in pertinent part at length the *Hays* and *Hoebee* cases. It also made mention of the federal exemption and House Report No. 2091. Although the case holding was limited to Iowa law on its facts, the court's discussion included federal law. The language of the opinion is unequivocal; while Congress may not have intended to create civil liability in damages in the original Program, the amendment made it clear that Congress removed any doubt as to the import of the Program with the enactment of the amendment. The court noted that the practical effect of creating tort liability from the statute was much the same as automobile liability placed on the owner pursuant to an Iowa statute.

Finally, in *Sosa, supra,* the Federal District Court for Texas followed the Fifth Circuit *Hays* decision and imputed the negligence of the pilot to the owner of the aircraft pursuant to § 1301(26). The court had before it a question whether the Federal Aviation Program, § 1301(26), was applicable to an entirely intrastate flight. It held that § 1301 (26) was applicable and plaintiff stated a cause of action arising under it. The case adds a new factor which is missing in the others. Texas state law did not contain the identical provision for equating owners and operators, and in fact Texas had repealed such a provision. The court found, nevertheless, that the Texas law reflected a legislative intention to coordinate, cooperate and avoid conflict with the enforcement of the Federal Aviation Program. From this case it is clear that the absence of an identical state statute, where state law is at least not the contrary, is immaterial to a finding that § 1301(26) creates a private cause of action for damages.

We have chosen not to follow these four cases for several reasons. First, and foremost, they place significant reliance on the House Report No. 2091 as indicating the Congress intended that § 1301(26) apply to common law suits to impute the negligence of a bailee to his bailor. We do not read the House Report as evincing this intent, nor understand how so much reliance can be placed on a report to an amendment to an Act of Congress to show what the original enacting Congress intended. Secondly, neither of the federal courts had before it the very question of imputing negligence by means of § 1301(26) of the Federal Aviation Program; the two state courts, as we read the opinions, only spoke in dicta with respect to imputing negligence by way of § 1301(26) of the Federal Aviation Program. Perhaps as a consequence, there is a paucity of reasoning to explain how Congress intended to change the legal relationships of owners and bailees, with respect to actions under state law for the recovery of damages in tort, by a definitional section to a regulatory statute which section states that an owner is deemed to be an operator *for the purposes of this chapter* (referring to the Federal Aviation Program).

Finally, there is either express or indirect language in all of the cases to suggest that the imputation of negligence by § 1301(26) must be accomplished by *implying a civil remedy* from the Federal Aviation Program. Certainly, liability is incurred by the owner under the statute according to these cases. A cause of action running against the owner necessarily is created by statute. Yet, in reaching this result the cases do not take into consideration the factors discussed earlier in this opinion. Absent these considerations the cases are unpersuasive.

In conclusion, we reiterate that we find no compelling reasons to imply a civil right of action from the Federal Aviation Program, § 1301(26). In fact, the difficulties arising from such an implication are immense and would be incurred unnecessarily in the absence of Congressional intent directing the result. Furthermore, we do not find that Congress intended to replace the legal relationships created by state common law or statute with respect to tort liability, with the relationship as stated in § 1301(26) of the Federal Aviation Program. It is accordingly

Ordered that defendants' motion to strike be, and the same hereby is, granted.