Robert L. McCORD and Oswald Simon,
Plaintiffs-Appellants,

v.

DIXIE AVIATION CORPORATION et al.,
Defendants-Appellees.

No. 71–1121.

United States Court of Appeals,
Tenth Circuit.

Nov. 26, 1971.

Michael A. K. Dan, Los Angeles, Cal., for plaintiffs-appellants.

Robert W. Brandt, Salt Lake City, Utah, for defendants-appellees.

Before JONES *, HILL and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Robert L. McCord and Oswald Simon, residents of California, appeal from the trial court's order granting appellees' motion for dismissal of two causes of action wherein plaintiffs-appellants alleged that the negligence of the pilot should be imputed to the defendants-appellees as a matter of law pursuant to the Federal Aviation Program, 49 U.S. C. § 1301(26).[1]

McCord and Simon suffered injuries in an airplane crash in Utah on June 22, 1969. The pilot, John L. Bury, who held a valid operating license, died in the crash. He had rented the plane that day at St. George, Utah, from the appellees, H. Bruce Stucki and Dixie Aviation Corporation, owners and fixed base

---

* Of the Fifth Circuit, sitting by designation.

I. (26) "Operation of aircraft" or "operate aircraft" means the use of aircraft, for the purpose of air navigation and includes the navigation of aircraft. Any person who causes or authorizes the operation of aircraft, whether with or without the right of legal control (in the capacity of owner, lessee, or otherwise) of the aircraft, shall be deemed to be engaged in the operation of aircraft within the meaning of this chapter.

operators in Utah, to transport his passengers, McCord and Simon.

■ Appellants, McCord and Simon, alleged that pilot Bury was negligent in the operation of the plane and that by operation of 49 U.S.C. § 1301(26), *supra,* his negligence is properly imputed to the owners, fixed base operators, as a matter of law. Appellants do not contend that appellees exercised any control over the operation of the plane or that the plane was defective in any manner. They do not charge any active negligence to the appellees. Furthermore, there is no allegation of agency relationship. The pleadings present a bailment relationship.

In order for appellants to prevail, this court must imply a civil remedy available to them under provisions of the Federal Aviation Program of 1958. We decline to do so. We affirm the trial court's Order of Dismissal.

Appellants argue that Fitzgerald v. Pan American World Airways, 229 F.2d 499 (2nd Cir. 1956), Town of East Haven v. Eastern Airlines, Inc., 282 F.Supp. 507 (D.Conn.1968), Wills v. Trans World Airlines, Inc., 200 F.Supp. 360 (S.D.Cal. 1961), support their contention that we should imply the civil remedy urged. These decisions do not aid appellants. In each case the Court found a compelling reason to imply civil remedies. Importantly, in each case the Court found *active* violations of specific federal statutes by each of the defendants. So finding, the courts implied a civil remedy, particularly in view of the lack of state remedies and/or effective administrative remedies.

The only policy provision contained in the Federal Aviation Program of 1958 which might support the implication of a civil remedy against an airplane owner-bailor is that pertaining to the "promotion of safety in air commerce". 49 U. S.C. § 1302(e). An argument for implication of a civil remedy would have validity if the airplane were rented in an unsafe operating condition or under any other circumstances constituting proof that the owner-bailor knew or should have known that the aircraft would not be safely operated. Nothing in the Federal Aviation Program of 1958 or in the regulations justifies court implication of a private right of action anchored to the doctrine of strict liability against the owner-bailor of an airplane where no negligence exists.

Appellants cite cases holding the owner-bailor-lessor liable for negligent operation by the pilot. Each case involves state aeronautical statutes similar to the Federal Aviation Program. In Hoebee v. Howe, 98 N.H. 168, 97 A.2d 223 (1953), the airplane owner was held strictly liable for injuries suffered by a child on the ground by a runaway horse which had been frightened by a low-flying aircraft. The plane was being operated at an altitude lower than that prescribed by both the federal and state statutes. The Court found that the state legislature intended to place responsibility on the owner for the conduct of one to whom he entrusts the airplane, even though he was not in control. We reject the *Hoebee* rationale.

■ To further support their contentions, appellants point to a 1948 amendment, now 49 U.S.C. § 1404. In Rogers v. Ray Gardner Flying Service, Inc., 435 F.2d 1389, 1394 (5th Cir. 1970), cert. denied 401 U.S. 1010, 91 S.Ct. 1255, 28 L.Ed.2d 546 (1971), the Court said:

"That section excludes certain persons from liability for injuries *on the surface of the earth.* On its face it was enacted to facilitate financing of the purchase of aircraft by providing that those holding security interests would not be liable for injuries caused by falling planes or the parts thereof."

We agree with this interpretation. The specific purpose having been determined, we find no merit in appellants' argument that Congress, failing to specially exempt owners and lessors, intended that they be absolutely liable for injuries sustained by passengers of leased aircraft.

The hard core "public policy" issue raised by appellants here goes to the

"deep pocket" theory. They argue that if this court does not imply the civil remedy urged there may in fact be no remedy against the estate of the deceased pilot. Appellants contend that it is the "deep pocket" of the fixed base operator who has the most assets to reach and that, as a matter of public policy, it would be convenient, logical and consistently evenhanded to impute negligence to the fixed base operator. Our response is that if Congress had intended to impose strict liability on an owner-bailor, it was capable of clearly and directly so providing. We believe that Congress had no intention of providing for tort liability in the enactment of the Federal Aviation Program. That Act, and the agency rules promulgated thereunder, regulates the licensing, inspection and registration of aircraft and of pilots. Rogers .v. Ray Gardner Flying Service, Inc., *supra*. The Act particularly provides that nothing therein shall in any way abridge or alter the remedies now existing at common law or by statute. 49 U.S.C. § 1506. See also Rosdail v. Western Aviation, Inc., 297 F.Supp. 681 (D.Colo.1969).

We are not unmindful of those decisions finding jurisdiction under federal common law, nothwithstanding lack of Congressional intent, express or implied, declaring a right to recover for tort or breach of contract. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); Ivy Broadcasting Company v. American Telephone & Telegraph Company, 391 F.2d 486 (2nd Cir. 1968). In those cases the courts held that the federal interest was so strong and the regulatory statutes so comprehensive that a remedy for tort or breach of contract existed under federal common law.

We believe that under the Commerce Clause Congress could preempt state law with respect to liabilities for torts arising out of the operation of airplanes. United States District Courts are courts of limited jurisdiction and jurisdictional statutes are closely construed. Skelly Oil Co. v. Phillips Pe-

troleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); Brotherhood of Railroad Trainmen v. Denver and Rio Grande Western Railroad Company, 370 .F.2d 833 (10th Cir. 1966), cert. denied 386 U.S. 1018, 87 S.Ct. 1375, 18 L.Ed.2d 456 (1967); Trapp v. Goetz, 373 F.2d 380 (10th Cir. 1966).

There is no showing by the appellants that there is a. compelling federal interest justifying the application of the federal common law rule to fashion a cause of action in tort which would subject all owners and lessors of airplanes to damage judgments contrary to existing common law. We believe that to do so would constitute abusive judicial law-making. Recognition of the separation of power rule leads us to the conclusion that the contentions raised by the appellants here should be directed to the law-making power of Congress and not to the adjudicative power of this court.

We affirm the trial court's Order of Dismissal.