## SPARTAN AIRCRAFT CO. v. JAMISON, Adm'r.

No. 26415.    Jan. 11, 1938.

Rehearing Denied Feb. 8, 1938.

H. L. Smith, for plaintiff in error.

S. J. Montgomery, T. H. Haugh, Gubser & Logsdon, and J. B. Means, for defendant in error.

DAVISON, J. This is an appeal from a judgment of the district court of Tulsa county. The action was brought by Alexander Jamison, as administrator of the estate of Eugene C. Smith, deceased, against the Spartan Aircraft Company, a corporation, to recover damages for injuries received by Smith and for pain and suffering and death resulting therefrom. The judgment was based upon the verdict of a jury and was for the plaintiff. The defendant has appealed.

In the plaintiff's petition, the defendant was charged with several acts of negligence, alleged to have been the direct and proximate cause of the injury resulting in the death of deceased.

It is alleged that the defendant, by and through its managers, servants, agents, and employees, one Doc (J. H.) DeCelles and one James O. Slane, Ed Hudlow and one Kelley and others, "carelessly, negligently and unlawfully ran the rapidly revolving propeller of the said burning airplane into and upon said Eugene C. Smith, now deceased, with such force that the propeller broke and lacerated deceased's arm, shoulders and chest * * * as a result of said injuries died from said injuries within an hour * * *; that defendants, through its managers, servants, agents, and employees, were guilty of negligence and carelessness which was the proximate cause of said wrongful injury and death aforesaid in failing to properly equip said airplane just before its flight * * * with a battery of proper voltage and with proper insulation on the navigation lights, in fact the battery used was of such high voltage that it set fire to the insulation on the navigation lights before the airplane could be landed"

—all in violation of the United States regulations relative to proper airship equipment; that the injury was received while obeying the command of his superiors to save from destruction by fire an incoming, landing, burning airplane owned and operated by defendants.

Further negligence is alleged in not providing blocks against the wheels of the landing gear and brakes so as to stop the airplane; that defendant's agents and servants did not shut off the engine when it was driven up to the hangar and the airplane was permitted to run wild.

The defendant answered denying any negligence on its part.

The record shows that deceased was employed as a night watchman at the hangar of the aviation station of the Spartan School of Aeronautics, which is connected with the defendant corporation; that one Nelson, a licensed mechanic with credentials from the United States Department of Commerce, and a stranger to all parties involved, obtained permission from Hudlow, the service manager, to install a device upon a certain airplane belonging to the Spartan School of Aeronautics. This device was for the purpose of displaying from the airship while in flight certain electrically lighted letters, signs, or messages for night advertising. The regular lights of the airplane were operated by a 6-voltage battery. This battery did not have sufficient power to suppy the extra power for the advertising device. The regular 6-voltage battery was removed by Nelson and a 12-voltage battery substituted therefor. The plane was piloted by DeCelles, who was in the employ of the defendant and of the Spartan School of Aeronautics. The advertising device was operated by Slane, in no way connected with the defendant company or the school. When the plane had made its flight with apparently nothing wrong, it was landed and driven near the hangar, when it was discovered by Slane to be on fire in the wings. Mr. Slane used the extinguisher from the plane, but it did not extinguish the fire. He then ran into the hangar and secured a larger fire extinguisher and was extinguishing the fire. After one or more extinguishers had

been used by Slane and after the fire was practically extinguished, Smith, the deceased, ran out of the opening in the hangar door with a fire extinguisher in his arms and ran in front of the plane and right into the propeller of the plane and was injured, from which he died. Neither of the parties in the plane requested Smith to assist in extinguishing the fire nor had seen him after the flight, until they saw him running out of the hangar door with the extinguisher. Slane yelled at him to look out for the "prop," meaning the propeller.

The undisputed testimony shows that DeCelles, who piloted the plane, took no part in the wiring or hooking up of the skywriting device on the plane. There is no testimony that DeCelles or any other employee of the defendant, or of the Spartan School, authorized Nelson to change batteries in the plane. There is no testimony that any one in authority requested DeCelles to make the flight, and he testified that no such request was made to him. Mr. Nelson had asked DeCelles to fly the plane. DeCelles testified that he had learned that some of the parties downtown in the office connected with the defendant company were interested in seeing this apparatus flown, and Nelson wanted to be with them.

Witness DeCelles testified that he did not abandon the plane, but was in the plane when Smith was injured; that he brought the plane to a stop on the concrete slab, the usual place to taxi it; that Slane walked to the tail of the plane and stopped it; that the plane never did run or creep and edge along on the apron or concrete slab after it was brought to a stop; that from the place where the plane stopped, it was upgrade toward the hangar.

Witness Slane in a sworn statement relative to the accident, and which was introduced into the evidence and made soon after the accident, stated, "as soon as the plane came to a stop I got out of the front cockpit to hold the tail surface to keep the plane from rolling down the slight grade of the concrete apron due to the fact that this plane was not equipped with brakes." This witness testified on the hearing of the cause that the plane was moving forward when Smith ran into the propeller. Later in his testimony he said that he would not say for sure whether the plane had come completely to a stop at the time Mr. Smith ran into the propeller, "because I wasn't there all the time, I ran in the hangar."

The further testimony of DeCelles was to the effect that his duties under his employment were from sunup until sundown; that he did no night flying for the company; that he had authority from the department inspector for the flight to be made.

Witness Hudlow testified that he had been treasurer of the Spartan School of Aeronautics, was later in charge of the school; and later put in charge of the aircraft company; that he was a licensed transport pilot; that the plane was licensed and approved by the Department of Commerce and had its regular inspection, and that was all that was necessary to be known about the ship or its flying conditions; that the writing device placed on the plane was all right, but when Nelson hooked up the navigation lights to the 12-volt battery it was too much electricity on 6-volt bulbs and overheated the bulbs and caused the fire; that he did not know at the time that the navigation lights were connected with the 12-volt circuit.

From the testimony, practically all of which is undisputed, we must conclude that the plaintiff failed to prove the material allegations of his petition. There is no proof to show that negligence on part of the defendant or any of its agents and employees was the proximate cause of the injury received. The proof does not show that Smith was obeying the commands of his superiors to save the plane from destruction by fire when he ran into the propeller of the plane, or that anyone had even asked him to assist in extinguishing the fire, or that they even knew he was near.

There is no testimony which even tends to show that either the defendant or its employees and servants improperly equipped the plane for the flight or had anything to do with the equipping of the plane.

There is no testimony to show that when the airplane was driven up to the hangar, the engine was left in a position to run wild; but there is proof that the throttle was all the way back and the motor and propeller were merely idling. DeCelles had gotten back into the cockpit where he could steer the plane away from the hangar if the fire could not be extinguished. There was no competent testimony to show that the plane was moving at the time Smith ran into it.

There is no testimony to show that any of the parties who equipped the plane with the advertising device and charged the bat-

tery thereon were in the employment of the defendant, or that the party who piloted the plane was engaged at the time in the service of the defendant and acting in line of duty as such employee.

There is proof that the battery attached by Nelson was of too great a voltage for the 6-volt navigation lights on the plane and caused them to become overheated, setting the plane on fire. There is proof also that this particular plane was not equipped with brakes to stop the plane, but neither the catching afire of the plane nor the want of proper brakes was the proximate cause of the death of Smith. Had the plane caught fire from any other cause, the result would have been the same. The want of brakes was immaterial, since the plane was at a full stop at the time of the accident. The testimony shows that Smith was duly cautioned about approaching planes from the front and especially when the motor was running.

Witness DeCelles testified that authority had been obtained from the department inspector, Gillespie, to make the flight, otherwise the flight would never have been made.

It is undisputed that Nelson was the party who secured the use of the plane to make the flight for the sole purpose of exhibiting his night advertising patent. It was in the nature of a bailment of possession of personal property without hire. Lord v. Oklahoma State Fair Association, 95 Okla. 294, 219 P. 713. The testimony shows that Slane, who operated the advertising device, was not an employee of the defendant. This is not disputed. Mr. DeCelles made the flight at the request of Nelson and not at the request of the defendant or any of its employees. The time was beyond his work hours and he was not in the employ of the defendant for the purpose of and during the time of making the flight. The mere fact that DeCelles was employed by the defendant and was its servant in its service is insufficient. It is a well-settled principle of law in this state

that even though the driver of a vehicle is a servant of the owner of the same, the owner is not liable unless, at the time of the accident, the driver was acting within the scope of his authority and in regard to his master's business. Boling v. Asbridge, 84 Okla. 280, 203 P. 894; Stumpf v. Montgomery. 101 Okla. 257, 226 P. 65. Not only must the pilot of the plane at the time of the injury have been acting for the owner and within the scope of his employment, but the injury must have been the proximate result of the negligence of such pilot. DeCamp v. Comerford, 134 Okla. 145, 272 P. 475; Carder v. Martin, 120 Okla. 179, 250 P. 906.

The court is of the opinion that the testimony failed to show primary negligence on part of the plaintiff. It is a well-established rule of law in this state that, where the evidence in an action for personal injury fails to show primary negligence, the court should sustain the demurrer to the evidence and instruct a verdict in favor of the defendant. Turner v. Durant Cotton Oil Co., 96 Okla. 31, 219 P. 892; Shuck, Administrator, v. Davis, Federal Agent of Railways, 110 Okla. 196, 237 P. 95.

At the conclusion of plaintiff's testimony, the defendant interposed a demurrer to the insufficiency thereof to constitute a cause of action against the defendant. The demurrer was overruled by the court. At the close of all the testimony, the defendant interposed its demurrer to the evidence and asked for an instructed verdict in favor of the defendant, which was disallowed. This court being of the opinion that no primary negligence on part of the defendant was shown, we think the court erred in submitting the case to the jury. The judgment is, therefore, reversed, with directions that a new trial be granted.

OSBORN, C. J., and WELCH, GIBSON, and HURST, JJ., concur. BAYLESS, V. C. J., and RILEY, PHELPS, and CORN, JJ., dissent.