DOUBLE–EAGLE LUBRICANTS, INC.,
a corporation,

v.

The STATE OF TEXAS.

Civ. A. No. 3–995.

United States District Court
N. D. Texas,
Dallas Division.

Dec. 10, 1965.

John B. Ogden, Oklahoma City, Okl., for plaintiff.

Robert W. Norris, Asst. Atty. Gen., Waggoner Carr, Atty. Gen., Hawthorne Phillips, T. B. Wright, Howard M. Fender, Lonny F. Zwiener, Asst. Attys. Gen., with him on the brief, Austin, Tex., for defendant.

James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, E. K. Elkins, Washington, D. C., for Federal Trade Commission as amicus curiae.

Before BROWN, Circuit Judge, and DAVIDSON and HUGHES, District Judges.

HUGHES, District Judge.

This suit was brought by Double-Eagle Lubricants, Inc., an Oklahoma corporation, against the State of Texas seeking a declaratory judgment and injunction against the enforcement of Ar-

ticle 1106(b) Vernon's Annotated Penal Code of Texas.

Double-Eagle is in the business of purchasing previously used oil (crank case drainings) which it refines and then sells to dealers for resale to the public.

Article 1106(b) Vernon's Annotated Code of Texas [1] provides that all re-refined or re-processed oil that is sold in the State of Texas be labeled "Reconditioned Motor Oil", and such label shall appear "on the front and back surface of the container when displayed to the public in sale displays."

Section 5(a) of the Federal Trade Commission Act, 66 Stat. 632, 15 U.S.C. 45 (a) [2], empowers and directs the Federal Trade Commission to prevent persons, partnerships or corporations * * * from using * * * unfair or deceptive acts or practices in commerce.

Under the authority of this statute the Commission promulgated a rule relating to "Deceptive Advertising and Labeling of Previously Used Lubricating Oil", 16 C.F.R. 406.1, 406.3, 406.5(b) (2) (Supp. 1965) [3] which concluded that it is an un-

---

1. Article 1106.

"(b) No person, firm, association of persons or corporation shall sell or offer for sale as lubricating oil, any oil that has been rerun, refiltered, reclaimed or refined from crank case draining or any other oil that has been theretofore used for purposes of lubrication, unless the said oil is sold as and labeled 'Reconditioned Motor Oil'. The words 'Reconditioned Motor Oil' shall be plainly and legibly printed on each container, which said lettering shall be imprinted in two (2) places on the container or label in a manner that said lettering will appear both on the front and back surface of the container when displayed to the public in sale displays, and which said lettering shall be in letters of not less then three-sixteenth (3/16) of an inch in height and not less than one-sixteenth (1/16) of an inch in the width of each line used to form said letters."

2. The pertinent provisions of Section 5(a) are as follows:

"5(a) (1) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful.

"5(a) (6) The Commission is empowered and directed to prevent persons, partnerships or corporations * * * from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."

3. The pertinent provision of the rule is as follows:

"Section 406.5(b) Accordingly, for the purpose of preventing such unlawful practices, the Commission hereby promulgates, as a Trade Regulation Rule, its conclusions and determination that in connection with the sale or offering for sale of lubricating oil composed in whole or in part of previously used lubricating oil, in commerce, as 'commerce' is defined in the Federal Trade Commission Act, it constitutes an unfair method of competition and an unfair and deceptive act or practice to:

* * * * *

(2) Fail to disclose clearly and conspicuously that such used lubricating oil has been previously used, in all advertising, sales promotional material and on each front or face panel of the container. For the purpose of this Part 406 the front or face panel means the part (or

fair and deceptive act or practice to fail to disclose on the front panel of the container the fact that a lubricating oil has been made from previously used oil.

Double-Eagle Lubricants, Inc., was directed by the Commission to comply with this rule and upon its refusal, a proceeding was brought against the corporation and its officers, individually. The final order of the Commission, dated October 22, 1964, directed the corporation and its officers in connection with their offering for sale of lubricating oil in commerce to forthwith cease and desist from, *inter alia:*

"1. Advertising, offering for sale or selling, any lubricating oil which is composed in whole or in part of oil which has been reclaimed or in any manner processed from previously used oil, without disclosing such prior use to the purchaser or potential purchaser in the advertising and sale promotion material, and by a clear and conspicuous statement to that effect on the front panel or front panels on the container."

A petition to review and set aside this order, filed by Double-Eagle, was denied by the United States Court of Appeals for the Tenth Circuit on November 15, 1965. Double-Eagle Lubricants, Inc., v. Federal Trade Commission, No. 7958.

In determining whether an injunction should be issued against the enforcement of Article 1106(b), Vernon's Annotated Penal Code of Texas, the first question presented is whether the Federal Government has preempted the regulation of interstate commerce among the several states so as to invalidate the Texas statute.

In the area of federal-state jurisdiction covering the same subject matter, by virtue of the supremacy clause of the United States Constitution, it is clear that federal law is paramount if Congress has clearly indicated an intention to preempt the field. On the other hand, before a federal statute or administra-

tive order will be deemed to have preempted a valid state safety regulation, Congress must clearly have manifested such intention.

In Retail Clerks International Association, Local 1625 v. Schermerhorn, 375 U.S. 96, at page 103, 84 S.Ct. 219, at page 223, 11 L.Ed.2d 179 (1963), the Supreme Court stated,

"* * * The purpose of Congress is the ultimate touchstone. Congress under the Commerce Clause, may displace state power * * * or it may even, by silence indicate a purpose to let state regulation be imposed on the federal regime."

In Head v. New Mexico Board of Examiners, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963), appellants, newspaper owners and a radio corporation, had been enjoined from accepting or publishing within the State of New Mexico a Texas optometrist's advertisement found to be in violation of New Mexico law. It was claimed by appellant-radio corporation that regulation of advertising by radio had been preempted by the Communications Act of 1934. In overruling this contention the Supreme Court stated at page 431, 83 S.Ct. at page 1764:

"The nature of the regulatory power given to the federal agency convinces us that Congress could not have intended its grant of authority to supplant all the detailed state regulation of professional advertising practices, particularly when the grant of power to the Commission was accompanied by no substantive standard other than the 'public interest, convenience, and necessity.' "

The Court also noted as significant that "the Commission itself has apparently viewed state regulation of advertising as complimenting its regulatory function, rather than in any way conflicting with it."

Again in Florida Lime and Avocado Growers, Inc., v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), the

parts) of the container on which the brand name is usually featured and which is customarily exposed to the view of pro-

spective purchaser when displayed at point of retail sales; * * *."

Supreme Court upheld a California statute which prohibited the transportation or sale in California of avocados containing less than 8 per cent of oil, by weight * * * excluding the skin and seed, and which had resulted in exclusion from California markets of certain Florida avocados. The Court stated at page 146, 83 S.Ct. at page 1219, that the settled mandate governing the inquiry as to whether Congress has ordained that State regulation shall yield "is not to decree such a federal displacement 'unless that was the clear and manifest purpose of Congress', Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447".

Double-Eagle brings to our attention the case of Campbell v. Hussey, 368 U.S. 297, 82 S.Ct. 327, 7 L.Ed.2d 299 (1961), as authority for its contention that Congress has preempted the field of labeling commodities to the exclusion of the states. That case, however, involved tobacco which is regulated under a different statute from the one involved herein. In its opinion the Supreme Court noted at page 301, 82 S.Ct. at page 329, that Section 2 of the Tobacco Inspection Act, 49 Stat. 731, 7 U.S.C. § 511(a), stated that " 'uniform standards of classification and inspection' are 'imperative for the protection of producers and others engaged in commerce and the public interest therein.' "

■ No such clear statement of Congressional intent of uniform federal standards is found in the Federal Trade Commission Act. Neither in its text nor in its legislative history is there anything to indicate an intention by the Congress to confer exclusive jurisdiction on the Federal Trade Commission. Therefore, state laws providing for regulation of unfair or deceptive practices in commerce are valid unless they conflict with the federal law to the extent that both cannot stand in the same area.

■ An examination of Article 1106 (b) Vernon's Annotated Penal Code shows clearly that it is not in conflict with Section (5) (a) (1) of the Federal Trade Commission Act. The purpose of both is the same and they are mutually consistent. The Texas statute was passed to prevent deception of the public as to the nature of the product sold. The Federal Trade Commission Act was enacted to prevent unfair or deceptive acts or practices in interstate commerce.

As applied to Double-Eagle, the Commission's order requires Double-Eagle to make a disclosure on the front panel or front panels of its containers of the fact that its contents have been made from used oil.

■ The Texas statute requires that both the front and back of such containers bear the phrase "Reconditioned Motor Oil." Clearly compliance with the Texas statute does not result in conflict with Federal requirements.

In the case of Royal Oil Corporation v. Federal Trade Commission, 262 F.2d 741 (1959) a similar question was before the United States Court of Appeals for the Fourth Circuit. There the Court had before it an alleged conflict between a North Carolina statute and a Federal Trade Commission order as in this case. The distinction between the two cases is that in Royal Oil, the appellant contended that because of the conflict in Federal and state law, state law should control. In holding that there was no conflict between the Federal Trade Commission order and the state statute, the Fourth Circuit stated at page 743:

"However, we think that the order of the Commission in this case does not in reality conflict with the North Carolina law. The state statute does not prohibit the use of additional descriptive words, and the Commission has indicated that it is not the use of the word 'reprocessed' which it considers deceptive, but rather the failure to make the additional specific disclosures that the reprocessed oil had been previously used. The order is clearly not in conflict with the state's requirement, and the petitioner can readily comply with both."

From this holding, it is clear that no conflict exists in the intent and purpose

of or phraseology required by the Federal Trade Commission order and the Texas statute, and that Double-Eagle can comply with both.

The last question to be considered is whether Article 1106(b) Vernon's Annotated Penal Code as applied to Double-Eagle is unconstitutional by virtue of the Commerce Clause of the United States Constitution.

■ In Head v. New Mexico Board of Examiners, supra, in holding that the New Mexico statute involved did not constitute an undue burden on interstate commerce, the Supreme Court stated at page 427 of 374 U.S., 83 S.Ct. at page 1762:

"Without doubt, the appellants' radio station and newspaper are engaged in interstate commerce, and the injunction in this case has unquestionably imposed some restraint upon that commerce. But these facts alone do not add up to an unconstitutional burden on interstate commerce. As we said in Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852, 78 A.L.R.2d 1294, upholding the application of a Detroit smoke abatement ordinance to ships engaged in interstate and international commerce: 'In determining whether the state has imposed an undue burden on interstate commerce, it must be borne in mind that the Constitution when "conferring upon Congress the regulations of Commerce, * * * never intended to cut the States off from legislating on all subjects relating to the health, life, and all safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution."' "

In Savage v. Jones, 225 U.S. 501, 32 S.Ct. 715, 56 L.Ed. 1182 (1912), there was involved the validity of an Indiana statute regulating the sale of concentrated commercial feed for animals and providing for the affixing of labels and stamps on the packages as evidence of the guarantee and inspection thereof. In holding that the Act did not constitute an unwarranted interference with interstate commerce, the Supreme Court stated on page 524, 32 S.Ct. on page 722:

"The evident purpose of the statute is to prevent fraud and imposition in the sale of food for domestic animals, —a matter of great importance to the people of the state. Its requirements were directed to that end, and they were not unreasonable. It was not aimed at interstate commerce, but, without discrimination, sought to promote fair dealing in the described articles of food * * * when the local police regulation has real relation to the suitable protection of the people of the state, and is reasonable in its requirements, it is not invalid because it may incidentally affect interstate commerce, provided it does not conflict with legislation enacted by Congress pursuant to its constitutional authority."

■ Since the purpose of the Texas statute in requiring reconditioned motor oil to be labeled as such is to protect the safety and property of the public and to prevent a deception as to the nature and quality of the product the statute is within the police power of the State. While the law incidentally affects interstate commerce, it does not discriminate against such commerce and is reasonable in its requirements.

It is clear that Article 1106(b) Vernon's Annotated Penal Code is a valid exercise of the state's police power, and since the Federal government has not preempted the field to the exclusion of the states, the Texas statute is valid as applied to Double-Eagle.

■ Since the oral argument of this case was heard, the Supreme Court rendered its decision in Swift & Company, Inc. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (Nov. 22, 1965). It

**520**

held in that case that 28 U.S.C. § 2281 does not require that a three-judge court be convened to hear an application to enjoin enforcement of a state statute because of alleged congressional preemption of the field to the exclusion of the states. In reaching this conclusion, the Supreme Court expressly overruled a three year old contrary decision in Kesler v. Department of Public Safety, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962). 86 S.Ct. at 261. The Court further held that a claim that a state labeling regulation is repugnant to the Commerce Clause is "too insubstantial to support the jurisdiction of a three-judge court." 86 S.Ct. at 261.

In the absence of a determination by the Supreme Court whether its new construction of Section 2281 is to be applied retroactively, I hereby certify that, as the district judge to whom this case was originally assigned, I have individually arrived at the same conclusions as those contained in this opinion written in behalf of the panel. See 86 S.Ct. at 260 n. 4 and Query v. United States, 316 U.S. 486, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942).

The application for an injunction against enforcement of the statute is denied.