Viola **ROGERS**, Guardian et al.,
Plaintiffs-Appellees,

v.

**RAY GARDNER FLYING SERVICE,
INC. et al., Defendants-
Appellants.**

No. 28666.

United States Court of Appeals,
Fifth Circuit.

Nov. 16, 1970.

Rehearing Denied and Rehearing En
Banc Denied Dec. 22, 1970.

Jack Pew, Jr., Dudley Chambers, Dallas, Tex., for appellants; Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., of counsel.

James C. Cole, Malvern, Ark., Byrd, Davis, Eisenberg & Clark, Tom H. Davis, Don L. Davis, Austin, Tex., for appellees.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

SIMPSON, Circuit Judge:

This appeal requires us once more to examine the amorphous subject of federal pre-emption. The precise question is whether Title 49, U.S.C. Section 1301 (26) [1] preempts the Oklahoma law of bailments as it bears upon the liability of an owner-lessor of an airplane for the negligent acts of a non-agent operator-lessee.

This is a wrongful death action arising out of the crash of a private plane on January 2, 1967, in Oklahoma. Federal jurisdiction is based on diversity of citizenship. Gordon Hunter, a citizen of Texas, was pilot of the plane. The other occupants were his wife, Johnnie R. Hunter, and her sister, Ella Dunn. All three were killed in the crash, which occurred near Ardmore, Oklahoma, on a return trip to Wichita Falls, Texas, from Arkansas. Hunter was a member of the United States Air Force stationed

---

1. " § 1301. *Definitions*

　　As used in this chapter, unless the context otherwise requires—

　　*　　*　　*　　*　　*

　　(26) 'Operation of aircraft' or 'operate aircraft' means the use of aircraft, for the purpose of air navigation and includes the navigation of aircraft. Any person who causes or authorizes the operation of aircraft, whether with or without the right of legal control (in the capacity of owner, lessee, or otherwise) of the aircraft, shall be deemed to be engaged in the operation of aircraft within the meaning of this chapter."

in and a resident of Wichita Falls. The plaintiffs-appellees, Mr. and Mrs. Rogers, are Arkansas citizens, the parents of Mrs. Hunter and Mrs. Dunn. Mr. and Mrs. Rogers sued individually and Mrs. Rogers asserted a separate claim as guardian of the minor children of Mrs. Hunter by a previous marriage.

The defendants below, appellants here, are Ray Gardner Flying Service, Incorporated, a fixed base operator in Wichita Falls, and Ray Gardner, the president of the corporation, individually. The plane was owned by Les Wilson [2] and had been leased by Wilson to the corporate defendant, which in turn rented it to Hunter under oral agreement.

Appellees alleged that Hunter was negligent in the operation of the plane, and that such negligence was the proximate cause of the accident in which all occupants of the plane perished. They did not contend that the appellants exercised any control over the operation of the plane, that appellants were present in the plane, or that Hunter was their agent. Neither do they allege that the plane was negligently inspected or was rented while in a defective condition, or that the appellants were in any other manner negligent. The single thrust of the claim asserted against the appellants was that by operation of Title 49 U.S.C. § 1301(26) the defendants became vicariously liable for the negligence of the operator Hunter, and that this affords the basis for a wrongful death action under the law of Oklahoma.[3]

The controlling issue was raised before the district court by a defense motion for summary judgment. The district court denied the motion, holding that Title 49 U.S.C. § 1301(26) "does not provide the source for establishing owner and lessee responsibility for the negligence of the pilot, the cause of action being created by the Oklahoma wrongful death statute". The district judge certified that her order involved a controlling question of law to which there was substantial ground for difference of opinion, and that appeal therefrom might materially advance the ultimate termination of the litigation. A panel of this Court allowed the appeal, under Title 28 U.S.C. Section 1292(b).

The Oklahoma wrongful death statute, 12 Okla.Stats.Ann. § 1053,[4] provides that the defendant is liable only if the deceased might have maintained an action against the defendant for the same act or omission. However, Oklahoma decisions would not allow a cause of action against the defendants below. The Oklahoma Supreme Court has expressly held that the negligence of the bailee of an airplane may not be imputed to the bailor. Spartan Aircraft Company v. Jamison, 181 Okl. 645, 75 P.2d 1096 (1938). See also Randolph v. Schuth, 185 Okl. 204, 90 P.2d 880 (1939).

Appellees apparently concede that no cause of action accrued to them under the Oklahoma law of bailments; they maintain, rather, that Title 49 U.S.C. § 1301(26), forms the basis for a cause of action under the Oklahoma wrongful

---

2. Wilson was originally a defendant in this action but was subsequently dismissed from the suit.

3. The parties are agreed that the Texas conflict of laws rule commands that the law of the place of the tort controls, and that the plaintiff's cause of action, if any, lies under the Oklahoma wrongful death statute. Marmon v. Mustang Aviation, Incorporated, 430 S.W.2d 182 (Tex. Sup.1968).

4. " § 1053. *Death—Action for*
"When the death of one is caused by the wrongful act or omission of anoth-er, the personal representative of the former may maintain an action therefor against the latter, or his personal representative if he is also deceased, if the former might have maintained an action had he lived, against the latter, or his representative, for an injury for the same act or omission. The action must be commenced within two years. The damages must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin; to be distributed in the same manner as personal property of the deceased."

death statute. They point out that this section of the Federal Aviation Act of 1958 [5] provides that anyone who authorizes the operation of aircraft in the capacity of an owner or lessee or otherwise is deemed to be engaged in the operation of aircraft as defined in the statute. Also, Title 49 U.S.C. § 1430 provides:

"(a) It shall be unlawful—

\* \* \* \* \* \*

(5) For any person to operate aircraft in air commerce in violation of any other rule, regulation, or certificate of the Administrator under this subchapter."

An agency regulation states that "No person may operate an aircraft in a careless manner so as to endanger the life or property of another". 14 C.F.R. § 91.9. The interweaving of these statutory sections and agency rules leads the appellees to the conclusion that if they can prove that the pilot was operating the airplane in a careless and negligent manner, then this declared unlawful conduct is imputed to the defendants by law under the provisions of Title 49 U.S.C. § 1301(26).

In 1948, the following section was added to the Act [now Title 49 U.S.C. § 1404]:

"No person having a security interest in, or security title to, any civil aircraft, aircraft engine, or propeller under a contract of conditional sale, equipment trust, chattel or corporate mortgage, or other instrument of similar nature, and no lessor of any such aircraft, aircraft engine, or propeller under a bona fide lease of thirty days or more, shall be liable by reason of such interest or title, or by reason of his interest as lessor or owner of the aircraft, aircraft engine, or propeller so leased, for any injury to or death of persons, or damage to or loss of property, on the surface of the earth (whether on land or water) caused by such aircraft, aircraft engine, or propeller, or by the ascent, descent, or flight of such aircraft, aircraft engine, or propeller or by the dropping or falling of an object therefrom, unless such aircraft, aircraft engine, or propeller is in the actual possession or control of such person at the time of such injury, death, damage, or loss." [6]

The appellees rely on these statutes as evidence of their claim that Congress purposefully considered the question of pre-empting state laws on bailment of airplanes and concluded that only those persons exempted by Section 1404 should not be held liable as operators. They reason that Congress clearly intended to preempt state law and to protect the public from the negligence and financial irresponsibility of pilots by imposing vicarious liability upon one who allows his aircraft to be flown by another. Appellees argue that it is sound public policy to place the responsibility for negligence upon the parties in a position to control the use of airplanes and upon those who generally are more likely to be financially responsible.

Appellees contend that we have in fact endorsed their view of the applicable law in the case of Hays v. Morgan, 5 Cir. 1955, 221 F.2d 481. They also cite Sosa v. Young Flying Service, S.D.Tex.1967, 277 F.Supp. 554; Lamasters v. Snodgrass, 248 Iowa 1377, 85 N.W.2d 622

---

5. Section 1301 was originally enacted in the Civil Aeronautics Act of 1938, and was retained in the Federal Aviation Act of 1958, which replaced the 1938 Act.

6. The House Committee Report on the amendment, as the reason for exempting security holders and certain lessors, stated:

"Provisions of present Federal and State law might be construed to impose upon persons who are owners of aircraft for security purposes only, or who are lessors of aircraft, liability for damages caused by the operation of such aircraft even though they have no control over the operation of the aircraft. This bill would remove this doubt by providing clearly that such persons have no liability under such circumstances." U. S. Congressional Code Service. 1948, 80th Congress, 2nd Session, p. 1836; House Report, No. 2091, 80th Congress, 2nd Session.

(1957); Hoebee v. Howe, 98 N.H. 168, 97 A.2d 223 (1953), as supporting their position.

We do not question that under its commerce clause powers Congress could pre-empt state law with regard to the liability for injuries resulting from air crashes. But we are not convinced that in this instance Congress has clearly indicated any such intent to supersede state laws of bailments as related to the operation of aircraft.[7] See Double-Eagle Lubricants, Incorporated v. State of Texas, N.D.Tex.1965, 248 F.Supp. 515, appeal dismissed 384 U.S. 434, 86 S.Ct. 1601, 16 L.Ed.2d 670, and the cases cited therein. If Congress had any such intent toward pre-emption in this area it was fully capable of making that intent clear directly and not by indirection requiring the circuitous reasoning plaintiffs find themselves driven to employ. In our judgment, what Congress did intend was to subject the classes of persons named in Title 49, Sec. 1301(26), equally with pilots to the rules, regulations, and penalties provided *in the Federal Aviation Act*. Several courts have in fact concluded that civil remedies for damages as a means of enforcing the act were not envisioned by Congress. Yelinek v. Worley, E.D.Va.1968, 284 F.Supp. 679; Moungey v. Brandt, W.D.Wis.1966, 250 F.Supp. 445; Southeastern Aviation, Incorporated v. Hurd, 209 Tenn. 639, 355 S.W.2d 436 (1962), appeal dismissed 371 U.S. 21, 83 S.Ct. 120, 9 L. Ed.2d 96 (1962).

We have been cited no case and we have found none from our independent research in which this precise subject has been before any of the Courts of Appeal. However, the issue was treated in depth by Chief Judge Arraj of the District of Colorado in Rosdail v. Western Aviation, Incorporated,[8] D.Colo. 1969, 297 F.Supp. 681. That court stated:

"*  *  *  We disagree, however, that Congress intended to alter common law principles with a definitional section of a regulatory scheme. The Federal Aviation Program regulates the licensing, inspection and registration of aircraft and airmen. It makes no provision for its application to tort liability and in fact provides that nothing in the Program shall abridge

---

**7.** Congressional intent or purpose to pre-empt state law may be shown in various manners. In Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947) it was said: "So we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress. Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 611, 47 S.Ct. 207, 209, 71 L.Ed. 452; Allen-Bradley Local [etc.] v. Wisconsin Employment Board, 315 U.S. 740, 749, 62 S.Ct. 820, 825, 86 L.Ed. 1154. Such a purpose may be evidenced in several ways. The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. Pennsylvania R. Co. v. Public Service Comm'n, 250 U.S. 566, 569, 40 S.Ct. 36, 37, 63 L.Ed. 1142; Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 62 S.Ct. 491, 86 L.Ed. 754. Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581. Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. Southern R. Co. v. Railroad Commission, 236 U.S. 439, 35 S.Ct. 304, 59 L.Ed. 661; Charleston & W. C. R. Co. v. Varnville Co., 237 U.S. 597, 35 S.Ct. 715, 59 L.Ed. 1137; New York Central R. Co. v. Winfield, 244 U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045; Napier v. Atlantic Coast Line R. Co., supra. Or the state policy may produce a result inconsistent with the objective of the federal statute. Hill v. Florida [ex rel. Watson], 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782."

Under neither of these tests are we persuaded that preemption was intended by Congress in the present situation.

**8.** The *Rosdail* case is the subject of a student casenote at 48 Texas Law Review 488 (1970).

or alter the remedies now existing at common law or by statute. 49 U.S.C. § 1506. Responsibility placed upon owners and lessors by § 1301(26) arises merely in the context of violations of the Program and regulations promulgated pursuant thereunder. Furthermore, responsibility is in the nature of express civil and criminal penalties as provided for in §§ 1471, 1472 and 1474 of the Program." (297 F.Supp. 684–685).

We are in accord with the reasoning and result reached by *Rosdail*. Tort law has historically been left to the states. We reiterate our disbelief, in the absence of clearer evidence, that Congress would undertake to alter the tort laws of numbers of states in such oblique fashion.[9]

■ Appellees' reliance upon our earlier decision in *Hays*, supra, page 6, is a mistake. In *Hays* the State of Mississippi had expressly incorporated the language of the Federal Aviation Act into the law of that state. Code Miss.1942, Sec. 7536–26(9) and 7536–12, and we were hence interpreting state law. It is one thing to say that the words of a state statute impose vicarious liability on the owners and lessors of an airplane. When those same words embodied in a federal statute are relied upon to widen state tort liability it is necessary additionally to consider federal-state comity and the requirement that Congress clearly manifest an intention to exercise fully its power under the commerce clause.

The *Lamasters* and *Hoebee* cases, supra, were likewise cases where state laws patterned after the Federal Aviation Act were being interpreted. Only *Sosa*, supra, involved an interpretation of the Federal Aviation Act. That decision appears to us to be based upon the same incorrect reading of *Hays* successfully urged by appellees upon the court below.

■ We are not unsettled by the 1948 amendment, Title 49 U.S.C. § 1404. That section excludes certain persons from liability for injuries *on the surface of the earth*. On its face it was enacted to facilitate financing of the purchase of aircraft by providing that those holding security interests would not be liable for injuries caused by falling planes or the parts thereof. This provision appears *clearly* and forthrightly to preempt any contrary state law which might subject holders of security interests to liability for injuries so incurred. If the Congressional intent was as clearly stated with regard to Title 49 U.S.C. § 1301(26) our task would be correspondingly simpler. In the absence of similar clear manifestation of Congressional intent we find nothing in Title 49 U.S.C. § 1404 which supports construction of Title 49 U.S.C. § 1301(26) so as to preempt state law.

With leave of court the appellees have filed with the Court a post-submission brief in which it is urged that the recent opinion of the Supreme Court of the United States in Moragne v. States Marine Lines, Incorporated, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) bears upon this case. In *Moragne*, a longshoreman was killed while working aboard a vessel on navigable waters within the State of Florida. His widow brought an action against the owners of the vessel in a state court to recover damages for wrongful death and for the pain and suffering experienced by the decedent prior to his death. The claims were based upon unseaworthiness of the vessel and negligence. After removal of the case to the federal district court, the vessel owner moved for dis-

---

9. Although we have not independently researched the laws of all of the states with regard to the bailment of airplanes, counsel for the appellants allege that the adoption of appellees' pre-emption argument would alter the law of some eighteen states (Arizona, Georgia, Hawaii, Idaho, Maryland, Minnesota, Missouri, Nevada, New Jersey, North Carolina, North Dakota, Pennsylvania, South Carolina, South Dakota, Tennessee, Vermont, and Wisconsin) in addition to Oklahoma.

missal of the wrongful death claim on the grounds that maritime law provided no recovery for wrongful death within a state's territorial waters, and that the unseaworthiness was not a basis for liability under the Florida Wrongful Death Act. The district court dismissed the complaint and this Court affirmed after the Supreme Court of Florida answered our certified question [10] by holding that the Florida Death by Wrongful Act statute [11] does not allow recovery for wrongful death based upon unseaworthiness. The Supreme Court reversed, overruling *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), and holding that a wrongful death action may be brought under general federal maritime law for violation of maritime duty even in the absence of a cause of action under state statute.

Appellees attempt to analogize this decision with the instant case by urging that they may now bring this wrongful death action for alleged breach of federally declared aviation standards even in the absence of a cause of action under Oklahoma law.

Appellants' counter-argument quickly reaches the flaw in appellees' analogy to maritime law. The Constitution of the United States extends the judicial power of the federal courts to admiralty and maritime cases, and the federal courts have therefore been obliged to fashion a general maritime law in the absence of federal statute. Article III, Section 2, Clause 1; American Insurance Company v. Canter, 26 U.S. (1 Pet) 511, 545–546, 7 L.Ed. 242 (1828). State legislation which conflicts with general maritime law or federal statute is invalid. See Gilmore and Black. The Law of Admiralty, Sections 1–16, 1–17.

Conversely, the commerce clause as interpreted by the courts has left state sovereignty unimpaired except where Congress has clearly indicated an intent to supersede state law. Rice v. Santa Fe Elevator Corporation, supra,

footnote 7, Napier v. Atlantic Coast Line Railroad Company, 272 U.S. 605, 47 S. Ct. 207, 71 L.Ed. 432 (1926); Double-Eagle Lubricants, supra. The difference is clearly expressed by appellants' reply to the supplemental brief:

"Under this constitutional grant, the federal courts, except insofar as precluded by Congressional enactment or inhibited by stare decisis, are free to recognize and apply a judge-made cause of action for wrongful death in an admiralty case, as was done in *Moragne*. The Constitution, however, has not granted the federal courts any comparable power to fashion their own common law remedies in tort cases arising in the airways."

It becomes clear that the development of the power of the federal government under these two constitutional provisions has been strikingly dissimilar. A clear mandate has been recognized in the maritime area for the establishment of uniform federal law, whereas the delicate problem of federal-state relations has resulted in a more stringent rule that federal preemption under the commerce clause will not be presumed in the absence of a clear indication of the intent of Congress. The analogy to the *Moragne* holding fails to withstand analysis.

The judgment of the district court is reversed. The cause is remanded with directions to enter summary judgment in favor of the defendants-appellants.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

10. Under F.S.A. Sec. 25.031, and Fla.Supreme Court Rule 4.61.

11. F.S.A. Sec. 768.01 et seq.