Larry Steve BROADWAY, Administrator of the Estate of Steve Brice Broadway, Thomas Arnold McGee, as Administrator of the Estate of Billy Charles Broadway, Barbara B. Hardin, as Administratrix of the Estate of Michael Grover Hardin, and Jeanette B. Hall, Administratrix of the Estate of Bobby Allen Hall, Plaintiffs,

v.

J. W. WEBB, d/b/a Webb Aviation, Defendant.

No. BC–C–77–67.

United States District Court,
W. D. North Carolina,
Bryson City Division.

Oct. 28, 1977.

George C. Kosko, Kosko & Coffas, Columbia, S. C., Donald H. Holland, Camden, S. C., for plaintiffs.

Smith, Anderson, Blount & Mitchell by James G. Billings, Raleigh, N. C., for defendant.

## MEMORANDUM OF DECISION

WOODROW WILSON JONES, Chief Judge.

The Plaintiffs who are resident citizens of the State of South Carolina bring this diversity action as administrators of the estates of Steve Brice Broadway, Billy Charles Broadway, Michael Grover Hardin, and Bobby Allen Hall, under the Declaratory Judgment Act, 28 U.S.C.A. Section 2201, to determine whether the Defendant, a resident citizen of the State of Texas and the owner of the airplane, is liable under North Carolina law for all damages suffered by the Plaintiffs as a result of the crash of said plane while being operated by a "renter-pilot." The facts are not in dispute, having been established by the pleadings and stipulations.

On August 8, 1976, one Harold Kenneth Herron rented from the Defendant a 1969 Cessna Skyhawk aircraft, Serial Number

17257631 which was owned by the Defendant and parked or kept at his place of business in Houston, Texas. Herron flew the plane in company with Ed Hemphill to Sossaman's Field in Bryson City, North Carolina on the same day. On August 9, 1976 they flew from Sossaman's Field to Ferguson Field a few miles away to service the plane for the return trip to Houston scheduled for August 10, 1976. Upon arrival at Ferguson Field they found the operator temporarily absent and decided to await his return. While Herron waited the Broadway family arrived at the airport seeking a sight-seeing trip around the mountains. Herron agreed to take them on a trip without charge. Hemphill remained on the ground to make room for the Broadways consisting of two men and two boys. The take-off appeared to be normal but a few miles from the field the plane crashed killing the pilot and all passengers.

The Plaintiffs contend that under North Carolina law the owner-lessor of an airplane is liable for damages caused by the negligence of the "renter-pilot," while the Defendant contends that under the law of Bailments no liability exists under the facts of this case.

The Matter was heard at the September 1977 Term of this Court in Bryson City and after full consideration of the pleadings, briefs and arguments the Court now enters its findings and conclusions.

In the absence of a statute applicable to these facts the law of North Carolina which would control this case was stated by Chief Justice Stacey in *Sink v. Sechrest*, 225 N.C. 232, 34 S.E.2d 2 (1945):

"The cases are in accord that generally a third party may not recover of the bailor for the negligent use by the bailee of the bailed chattel, in the absence of some control exercised by the bailor at the time, or of negligence on his part which proximately contributed to the injury. 8 C.J.S., Bailments, § 40, p. 318; 19 A.L.R. 1194; *Tyson v. Frutchey*, 194 N.C. 750, 140 S.E. 718. The doctrine of *respondeat superior* ordinarily is inapplicable to the relationship of bailor and bailee, unless made so by statute. 6 Am.Jur. 396."

The Plaintiffs contend that the North Carolina General Assembly changed the law by the enactment of G.S. 63–1(16) which reads as follows:

" 'Operation of aircraft' or 'operation aircraft' means the use of aircraft for the purpose of air navigation and includes the navigation or piloting of aircraft. Any person who causes or authorizes the operation of aircraft, whether with or without the right of legal control (in the capacity of owner, lessee, or otherwise) of the aircraft, shall be deemed to be engaged in the operation of aircraft within the meaning of the statutes of this State."

The Defendant contends that the above-quoted provision appears only in the definitional portion of a uniform statute enacted by the several states to regulate certain aviation activity, and that by its adoption the North Carolina General Assembly did not change or intend to change the substantive law of bailments.

The language relied upon by the Plaintiffs is found in the Federal Aviation Act, 49 U.S.C.A. Section 1301 and in many state statutes. Actions to impose vicarious liability have been brought under both the Federal and State statutes with varying degrees of success. The North Carolina courts have not passed upon the matter and we must look to other decisions for some guidance in the cause.

The first major case interpreting the language of such a statute to create liability against the owner of a leased airplane was *Hoebee v. Howe*, 98 N.H. 168, 97 A.2d 223 (1953) wherein the Supreme Court of New Hampshire found that the New Hampshire Aeronautics Act passed in 1941 was evidently copied from the federal act and contained identical definitive provisions as to who are deemed operators of aircraft. The court held that:

"It seems to us from reading our act that the intent of our Legislature is clearly to place responsibility on the owners, even though he be without control, for the conduct of one to whom he entrusts the plane. The language is unequivocal and

without qualification expressed or reasonably to be implied."

The Court further relied upon a congressional committee report recommending an amendment to the Federal Act to relieve certain security holders from liability under the Act.

In 1955, the Court of Appeals for the Fifth Circuit interpreted an identical provision in the Mississippi Code to mean "that the owner who authorizes the operation of any aircraft, whether with or without the right of legal control thereof, shall be deemed to be engaged in the operation thereof within the meaning of the statute of Mississippi. The liability of the owner is there just as much as if he were the operator of the aircraft. The owner who authorizes a pilot to use his plane becomes liable for the negligence of the pilot in the operation of the plane." *Hays v. Morgan,* 221 F.2d 481 (1955).

The Supreme Court of Iowa in *Lamasters v. Snodgrass,* 248 Iowa 1377, 85 N.W.2d 622 (1957) interpreted the language in its Act, identical to the Federal and North Carolina Acts, to impose vicarious liability upon the owners of a plane.

The Court of Appeals for the Seventh Circuit in *Allegheny Airlines, Inc. v. United States of America et al.,* 504 F.2d 104 construed an identical provision in the Indiana statute to mean that the owner is liable for the careless and reckless operation of his aircraft by another.

Three other cases cited by the Plaintiffs are *Ross v. Apple,* 143 Ind.App. 357, 240 N.E.2d 825, 241 N.E.2d 872 (1968), *Heidemann v. Rohl,* 86 S.D. 250, 194 N.W.2d 164 (1972) and *Pierce v. Der Wienerschnitzel International, Inc.,* 313 F.Supp. 740 (D.C.W. D.Missouri, 1970). Each of these cases lend support to the Plaintiffs' argument. The Courts cite the *Hoebee* and *Lamasters* opinions with little further discussion of the issues and law.

On the other side of the coin the Supreme Court of Minnesota in *Haskin v. Northeast Airways, Inc.,* 266 Minn. 210, 123 N.W.2d 81, held that an identical provision in the Minnesota statute did not operate to change the law relative to the liability of owners of airplanes. The Court gave considerable weight to the decisive manner in which vicarious liability was imposed on automobile owners by the Legislature as compared to the language relied upon which appeared only in the definition section of the statute.

In *Ferrari v. Byerly Aviation, Inc.,* 131 Ill.App.2d 747, 268 N.E.2d 558 an Illinois appellate court held that an identical provision of the Illinois statute did not change the law of the State as to civil liability for the negligent operation of an airplane. The Court said:

"We are unable to agree with the plaintiff that the plain meaning of Section 22.11 establishes or creates civil liability in the owner of an airplane for the negligent operation thereof by another. Section 22.11 quoted above, is one of the definition sections of the Illinois Aeronautics Act as is the provision from which it is copied in the Federal Act. The language of the definition does not in our opinion by its plain meaning, indicate any concern with the civil liability of any party and in particular does not purport to establish some special or different relationship between an airplane owner and a pilot. Liability for acts or conduct of another is neither a new nor novel concept. Language to describe such a well recognized concept is readily available and could have been easily employed if such concept was intended. *Haskin v. Northeast Airways, Inc.,* 266 Minn. 210, 123 N.W.2d 81. We believe that Section 22.11 describes in general terms those parties included within or affected by the other provisions of the Aeronautics Act or the regulations promulgated under the authority thereof."

The Court distinguished the three leading cases relied upon by the Plaintiffs here and cited with approval the cases of *Rogers v. Ray Gardner Flying Service, Inc.,* 435 F.2d 1389 (5th Cir. 1970) and *Rosdail v. Western Aviation, Inc.,* 297 F.Supp. 681 (D.Colo.1969) and concluded that

"We are impelled to believe that the Illinois state legislature had no particular intent to deal with civil liability of an owner by adopting the language of the Federal Act. Consequently there is no legislative basis for plaintiff's theory of recovery."

In *Rosdail v. Western Aviation, supra,* the Plaintiffs brought suit under the Federal Aviation Act, 49 U.S.C.A. Section 1301(26) contending that the Act created a federal right of action. The district court found that section 1301(26) of the Act, which is almost identical to the section at issue here did not establish, either expressly or impliedly, a civil remedy that would impute a pilot's negligent operation of an aircraft to aircraft owner or lessor and did not alter common law principles to impose such liability. The Court said:

"We disagree, however, that Congress intended to alter common law principles with a definitional section of a regulatory scheme. The Federal Aviation Program regulates the licensing, inspection and registration of aircraft and airmen. It makes no provision for its application to tort liability and in fact provides that nothing in the Program shall abridge or alter the remedies now existing at common law or by statute."

In *Rogers v. Ray Gardner Flying Service, supra,* the Fifth Circuit refused to extend its holding in *Hays v. Morgan,* 221 F.2d 481, to impose vicarious liability on owners of aircraft based on Section 1301(26) of the federal act where no comparable state statute had been enacted. The Court approved and adopted the *Rosdail* rationale that Congress would not undertake to alter the tort laws of numbers of states without showing a clear intent to do so.

*McCord v. Dixie Aviation Corporation,* 450 F.2d 1129 (10th Cir. 1971) also involved a suit against owner-lessors of an airplane by passengers injured in a crash allegedly caused by the negligence of the pilot. Relying on Section 1301(26) the Plaintiffs argued the negligence of the pilot should be imputed to the owners-lessors as a matter of law. The Court rejected the above argument as well as the contention that Congress by exempting certain persons in Section 1404 of the Act, but not specifically owners and lessors, intended for them to be absolutely liable. Quoting from *Rogers* the Court said:

"That section excludes certain persons from liability for injuries on the surface of the earth. On its face it was enacted to facilitate financing of the purchase of aircraft by providing that those holding security interests would not be liable for injuries caused by falling planes or the parts thereof." (underlining in the original)

The Plaintiffs in *McCord* argued that public policy demanded relief under Section 1301(26) of the Act otherwise the victim might go remediless. They contended that the owner rather than the pilot would have the "deeper pocket." The Court, however, found that the purpose of the Act was to regulate licensing, inspection, and registration of aircraft and pilots.

Still another case involving Section 1301(26) as enacted by a state legislature is *Haskin v. Northeast Airways, Inc.,* 266 Minn. 210, 123 N.W.2d 81 (1963). Here again the Minnesota Supreme Court refused to hold that the state's enactment of Section 1301(26) of the Act provided a basis for imposing vicarious liability on an owner-lessor of an aircraft.

In *Nachsin v. De La Bretonne,* 17 Cal. App.3d 637, 95 Cal.Rptr. 227 (1971), the Court again denied a plaintiff who sued the nonnegligent owner of an aircraft any recovery premised on section 1301(26) of the Federal Aviation Act. The Court cites with approval the reasoning of the *Rogers* and *Rosdail* cases.

Subsequent to the decisions in the *Ferrari* and *Haskin* cases the respective state legislatures amended their statutes to impose positive clear liability on the owner of an aircraft for any accident involving his plane. The Plaintiffs argue that the action of the legislatures shows that the courts were wrong in their interpretation of the legislative intent concerning the definition-

al statute. However, it is not the function of the court to strain to interpret an ambiguous statute in a manner which would drastically change prior law. The legislature is the proper place for such a change to take place as it did in Illinois and Minnesota.

The North Carolina Legislature has not expressed a clear intent to impose strict liability on an owner-lessor in the field of aviation. North Carolina's aviation statute is copied from the model federal act. It contains the same language found in Section 1301(26) of the Federal Act which in defining the Phrase "operation of aircraft" includes an owner with or without his permission. The statute merely says that the owner is "engaged in the operation of aircraft." It does not make it unlawful to operate an aircraft so as to cause harm nor does it deem a pilot to automatically be an agent of the owner as do statutes in Indiana and Minnesota respectively.[1] Thus, the Court is reluctant to accept the reasoning of the *Hoebee, Hays, Lamasters* line of cases holding that by enacting a statute similar to Section 1301(26) of the Federal Aviation Act, a state has created a cause of action in tort which is totally different from prior common law.

 Supporting the Court's belief that the North Carolina courts would reject the Plaintiffs' argument that the definitional statute imposed strict liability in aviation is N.C.G.S. 20–71.1 (1975) dealing with motor vehicle law. This statute provides that proof of ownership of an automobile is prima facie evidence that the vehicle was being used with the consent of the owner at the time of the accident. In the absence of proof of ownership, proof of registration shall be prima facie evidence of ownership and that the vehicle was being operated with the permission of the owner. By en-

acting such a statute the Legislature showed a clear intent to provide victims of automobile accidents with the opportunity to recover from the owner as well as the driver of a car involved in an accident. By enacting N.C.G.S. 20–71.1 the Legislature changed the prior common law as set out in *Sink v. Sechrest.* The statute only affects the law as it relates to motor vehicles. The North Carolina Legislature has not chosen to enact similar statutes in the area of aviation. With a motor vehicle statute imposing only prima facie liability on an owner of an automobile and no statute other than a definitional one relating to airplanes it would be difficult to find that the Legislature intended to impose strict liability on aircraft owners. Rather the law in North Carolina concerning the liability of aircraft owners remains the common law of Bailments as set out in *Sink v. Sechrest, supra.* As the Court said in *Ferrari,* language to describe such a well recognized concept is readily available and could have been easily employed by the Legislature if such concept was intended. The North Carolina General Assembly and the courts have been slow to impose or find strict liability in tort cases, and this Court cannot read into the definitional section of the statute in question any legislative intent to impose such liability here.

In summary, the Court finds that the law in North Carolina concerning the liability of an owner-lessor of an aircraft is governed by the common law of Bailments. There is no strict or vicarious liability imposed upon the owner-lessor by the enactment of N.C. G.S. 63–1(16) defining "operation of aircraft." It is a matter for the Legislature if it sees fit to enact statutes providing greater protection for those damaged or injured as a result of an airplane accident. The Court concludes that under the present law

---

1. Indiana Statute 14–109

"It shall be unlawful for any person to operate an aircraft in the air, or on the ground or water in a careless or reckless manner so as to endanger the life or property of another; or to operate an aircraft in the air, or on the ground or water with reckless disregard for the safety, property, or rights of others . . ."

Minnesota Statute 360.0216
*Operator of aircraft deemed agent of owner*
"When an aircraft is operated within the airspace above the state or upon the ground surface or waters of this state by a person other than the owner, with the consent of the owner, expressed or implied, the operator shall in case of accident be deemed the agent of the owner of the aircraft in its operation."

**434**

the Plaintiffs are not entitled to recover of the Defendant without a showing of actionable negligence. Therefore the action must be dismissed. A judgment in accordance with these findings and conclusions will be entered simultaneously herewith.